CORNELIA A. BEVERIDGE, as Executrix, etc., Appellant, v. THE NEW YORK ELEVATED RAILROAD COMPANY, Respondent.

The plea of *res adjudicata* is not available unless the judgment set up was rendered upon issues between the parties, in which the questions as to which the estoppel is claimed were or might have been competently adjudged.

A lease by one railroad corporation to another of its road, property and franchise authorized by the act of 1839 (Chap. 218, Laws of 1839), may be made by the board of directors of the lessor, and the concurrence of stockholders is not essential to its validity. The power conferred is to be exercised in the same manner as any other corporate power where the mode of exercise is not prescribed by the charter of the corporation or by general laws applicable thereto.

All powers conferred upon a corporation, unless otherwise expressly prescribed, must be exercised by its directors, who are constituted by the law as the agency for that purpose, and the consent of or ratification by its stockholders is not necessary to the validity of a corporate act unless expressly required by statute or the by-laws of the corporation.

Contracts, therefore, which the corporation may legitimately make, the manner of the making of which is not directed otherwise, may be made by its board of directors without the consent or ratification of stockholders ; and, in the absence of fraud or collusion on the part of the directors, they are binding on the corporation.

An appeal to equity on behalf of a stockholder to be relieved from acts of the directors of the corporation, where the acts complained of were within their powers, and apparently uninfluenced by corrupt motives or personal interests adverse to those of the stockholders, should at least be justified by some showing that the acts were improper within the belief of a fair proportion of the body of stockholders.

Where a plaintiff seeks to base his right to maintain his action upon a contract made between defendant and another, it must appear by the contract that it was made or intended for his benefit.

*Schemerhorn* v. *Vanderheyden* (1 Johns. 139); *Dutton* v. *Pool* (2 Lev. 210) distinguished.

In 1879 the New York E. R. R. Co. and the Metropolitan E. R. Co., in pursuance of a tripartite agreement, leased to the Manhattan E. R. Co. their railways, properties and franchises for a term of years. By the terms of the lease the lessee, among other things, "guaranteed" to each of the lessors "an annual dividend of ten per cent" on its capital stock, "that is to say," that it would pay to the lessor annually a sum specified, which was ten per cent on its stock. The lessee also covenanted that it would execute in proper form a guaranty to the above effect upon the certificates of stock of the New York company and renew the same upon all reissued certificates. In 1881 the lessee made default in the payment of rent and became insolvent, and in October of that year an agreement was made for the three companies by their respective boards of directors, by which the percentage to be paid on the capital stock of the lessors was reduced to six per cent., and in making the payments the New York company was to be preferred over the Metropolitan. In November said boards of directors made an agreement for the transfer or merger of the capital stock of the lessors into that of their lessee. At the annual meeting of the stockholders of the New York company in January, 1882, the October and November agreements were approved of by an almost unanimous vote of the shares represented, and, under the last agreement, over nine-tenths of the stock of the New York company was converted into stock of the Manhattan. In an action subsequently brought by the Metropolitan against the other two companies, the said agreements were adjudged to be void, among other reasons, because of want of power in its directors to make them, and all the parties were, by the terms of the judgment, relieved therefrom. After this decision the directors of the New York company who were, and had been since January, 1882, the same as those of the Manhattan company, took action which resulted in a surrender by the latter company of all the property leased by it of the former and a retransfer of the exchanged capital stock. B., plaintiff's testator, held a certificate of stock of the New York company, issued after the original leases were executed, upon the margin of which were engraved words to the effect that the Manhattan company, for value received, agreed to pay to the New York company "an amount equal to ten per cent. per annum on the capital stock of the latter company;" to this writing there was no signature. In an action against the New York and Manhattan companies, among other things, to compel the latter to pay to the former the ten per cent. as covenanted in the original lease, and to compel the New York company to pay ten per cent. dividends on plaintiff's stock, *held*, that while the judgment in the former action, destroyed the contractual relations between the parties, it was not *res adjudicata* upon any question

in this action; that the concurrence of stockholders was not essential to the validity of the lease of 1879, or the subsequent agreement reducing the rent; that the so-called guaranty contained in the lease of the New York corporation was one with it, as such, not with its individual stock-holders; that payments made under the lease went into its treasury, and the stockholders had no claim to them until, by some act of the corporation they had been appropriated to them; that the statement upon plaintiff's certificate was not a contract, and only purports to be a statement of facts as to the amount of revenue the corporation was in receipt of, and did not entitle the holder to that amount of dividends; and that plaintiff's action was not maintainable.

*Boardman* v. *L. S. & M. S. R. Co.* (84 N. Y. 157); *Barr* v. *N. Y., L. E. & W. R. R. Co.* (96 id. 444) distinguished.

A shareholder in a corporation has no legal right to its property or profits until a division is made or a dividend declared.

The declaration of a dividend is within the discretionary powers of the directors or trustees, which will not be controlled by the courts.

(Argued December 5, 1888; decided January 15, 1889)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 14, 1886, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Charles P. Cowles* and *Luke A. Lockwood* for appellant. The lease and the guaranty stamped on the certificate of stock constituted one transaction. (*Boardman* v. *L. S. & M. S. R, R. Co.*, 84 N. Y. 157.) After a dividend has been declared. each shareholder has, as against the corporation, an unconditional right to his portion of it. (Taylor on Private Corp. §§ 568, 750; *Le Roy* v. *Globe Ins. Co.*, 2 Edw. Ch. 657; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90; *In re Le Blanc*, 14 Hun, 8; 75 N. Y. 598; *Van Dyke* v. *McQuade*, 86 id. 38, 52.) A third party may enforce a promise made for his benefit when there is a duty owing from the promisee to the third party, which would give him a legal or equitable claim to the benefit of the promise. (*Vrooman* v. *Turner*, 69 N. Y. 280; *Hand*

v. *Kennedy,* 83 id. 149 ; *Little* v. *Banks,* 85 id. 258 ; *Todd* v. *Weber,* 95 id. 181.) Where a statement is made for the purpose of inducing a person to act upon the faith of the representations, and a person does rely upon the representations, the party making the statement is estopped from denying the truth or effect of the same. (*Pickard* v. *Sears,* 6 Ad. & Ellis, 469, 475 ; *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480, 483 ; *Dezell* v. *Odell,* 3 Hill, 215, 221 ; *Plumb* v. *C. M. Ins. Co.,* 18 N. Y. 392, 394 ; *Brown* v. *Bowen,* 30 id. 519, 541 ; *Blair* v. *Wait,* 69 id. 113.) A court of equity will compel a corporation to transfer its capital stock to the owner of the same. (*Cushman* v. *Thayer Mfg. Co.,* 76 N. Y. 365 ; Morawetz on Private Corp. § 337.)

*William H. Arnoux* for appellant. As matter of fact plaintiff is entitled to the certificate demanded. (*Boardman* v. *L. S. R. R.,* 84 N. Y. 157.) As matter of law the plaintiff is entitled to a certificate of stock issued by the New York Company with the indorsement of the Manhattan company thereon. (*Schemerhorn* v. *Vanderheyden,* 1 Johns. 140 ; *Meech* v. *Ensign,* 44 Am. Rep. 228 ; *Merriman* v. *Moore,* 90 Penn. St. 79.) A contract wherein the contractor, for a valuable consideration, assumes by covenant to do certain things inures to the benefit of the individual who is interested in its performance ; and in case of neglect to perform such covenant, such contractor is liable to an action at the suit of the party injured by such neglect. (*Little* v. *Banks,* 85 N. Y. 258, 263 ; *Glen* v. *M. L. Ins Co.,* 56 id. 379.) The consideration for the promise having been fully paid, on the part of the New York company, it is an executed contract, and the promise being for the benefit of the third party, the holder of the certificate, is irrevocable. (*Garnsey* v. *Rogers,* 47 N. Y. 233, 242 ; *Douglass* v. *Wells,* 18 Hun, 88, 92 94 ; *Savings Institution* v. *Burdick,* 20 id. 194 ; 78 N. Y. 137 ; *Hartley* v. *Harrison,* 24 id. 170 ; *Thorp* v. *Keokuk Coal Co.,* 48 id. 253.) An action in equity will lie to compel the transfer of stock. (*Cushman* v. *Thayer Manufacturing Co.,* 76 N. Y.

365; *Middlebrook* v. *Merchants' Bank*, 3 Abb. Ct. App. Dec. 295; *Mechanics' Bank* v. *Seton*, 1 Peters, 299; *Iron R. R. Co.* v. *Fink*, 41 Ohio St. 321; Fry on Special Perf. [3d ed.] 29.) The consent of the plaintiff's assignor was essential to the validity of the lease made by and between the defendants on the 20th day of May, 1879, and the same having been obtained by defendants, they are estopped from claiming that it was unnecessary. (*Abbot* v. *A. H. R. Co.*, 33 Barb. 582; *Black* v. *Del. etc. Co.*, 24 N. J. Eq. 455; *Copeland* v. *C. G. Co.*, 61 Barb. 60). The contract was *ultra vires*, and needed the ratification of the stockholders to give it any validity. (*Hotel Co.* v. *Wade*, 97 U. S. 13; *Black* v. *Del., etc., Co.*, 7 C. E. Green, 130; 24 N. J. Eq. 255; *Zabriskie* v. *Hackensack R. R. Co.*, 3 C. E. Green, 183; *Lawman* v. *L. V. R. R. Co.*, 6 Casey, 46; *Erven* v. *O. R. R. Co.*, 23 Blatch. 517, 525; *Hays* v. *O. R. R. Co.*, 61 Ill. 442; *C. G. L. Co.* v. *G. L. Co.*, 121 id. 530; 2 Am. St. R. 124; *Clearwater* v. *Meredith*, 1 Wall. 25; *Nugent* v. *Supervisors*, 3 Biss. 105; 19 Wall. 241; *McMahon* v. *Morrison*, 16 Ind. 172; *Mowry* v. *Ind. R. R. Co.*, 4 Biss. 78; Green's Brice on Ultra Vires [2d ed.] 632, 633; *Beman* v. *Rufford*, 1 Sim. [N. S.] 550; 20 L. J. Ch. 537; *S. R. R. Co.* v. *L., etc., Co.*, 4 De G., M. & G. 115; 22 L. J. Ch. 682.) Where an act done by a corporation is *ultra vires*, a stockholder who ratifies the act is estopped from questioning its validity. (*Clearwater* v. *Meredith*, 1 Wall. 25; *Veeder* v. *Mudgett*, 95 N. Y. 295, 310; *Fortier* v. *N. O. Nat. Bk.*, 112 U. S. 439; *G. Nat. Bk.* v. *Whitney*, 103 id. 99; *U. N. Bk.* v. *Matthews*, 98 id. 621; *Sheldon Co.* v. *Eickemeyer Co.*, 90 N. Y. 607; *M. E. R. R. Co.* v. *M. R. R. Co.*, 14 Abb. [N. S.] 237; Angell & Ames on Corp. § 771; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Metropolitan Case*, 14 Abb. [N. S.] 182; *Lawrence* v. *Fox*, 20 N. Y. 268; *Hand* v. *Kennedy*, 83 id. 149; *Burr* v. *Beers*, 20 id. 268; *Thorp* v. *Keokuk Coal Co.*, 48 N. Y. 283; *Campbell* v. *Smith*, 71 id. 26; *Hand* v. *Kennedy*, 83 id. 149; *Boardman* v. *L. S., etc., R. R. Co.*, 84 id. 157; *Prouty* v. *L. S., etc., R. R. Co.*, 85 id. 272; *Clark* v. *L. S., etc.,*

*R. R. Co.*, 91 id. 484; *March* v. *E. R. R. Co.*, 43 N. H. 515; *Pearson* v. *C. R. R. Co.*, 13 Am. and Eng. R. R. Cas. 101.) The plaintiff is entitled to be paid dividends on said stock according to the terms of the lease of 1879, and the terms of said certificate, and all subsequent agreements impairing such right, made by or between said companies, without her assent, are null and void. Having duly demanded and been refused such dividends, and having brought the proper parties into court, she is entitled to judgment either for the direct payment to her of said dividends or that such action shall be taken upon the part of the defendants as will secure to her the payment of the same. (*Metropolitan Case*, 14 Abb. [N. S.] 181, 231; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 444; *Blatchford* v. *Ross*, 5 Abb. Pr. [N. S.] 434; *Hevens* v. *R. & B. R. R. Co.*, 1 L. Reg. 154; *Chapman* v. *M. R. R. R. Co.*, 6 Ohio St. 119; *S. T. Co.* v. *Barnes*, 42 Ind. 498; *Lannean* v. *L. V. R. R. Co.*, 30 Penn St. 42; *Meyer* v. *S. I. R. R. Co.*, 7 N. Y. S. R. 245; *Dartmouth College* v. *Woodward*, 4 Wheat. 636; *Thomas* v. *R. R. Co.*, 101 U. S. 71, 79; *Penn. Co.* v. *S. L. R. R. Co.*, 118 id. 290; *Davis* v. *O. C. R. R. Co.*, 131 Mass. 258; *Colman* v. *E. C. R. R. Co.*, 10 Beav. 1; *Salomons* v. *Laing*, 12 Beav. 339, 352; *Bagshaw* v. *E. U. R. R. Co.*, 7 Hare, 114; *E. A. R. R. Co.* v. *E. C. R. R. Co.*, 11 C. B. 775; *S. Y. R. Co.* v. *G. N. R. Co.*, 9 Exch. 55, 84; *S. N. E. R. Co.* v. *Stewart*, 3 Macq. 382, 415; *E. C. R. Co.* v. *Hawkes*, 5 H. L. C. 331, 373; *S. & B. R. R. Co.* v. *N. W. R. Co.*, 6 id. 113, 135; *A. R. C. & I. Co.* v. *Rich*, L. R., 7 id. 653, 659; L. R., 9 Exch. 224; *E. A. R. R. Co.* v. *E. C. R. R. Co.*, 11 C. B. 775, 813; *Houldsworth* v. *Evans*, L. R., 3 H. L. 263; *Evans* v. *Smallcombe*, Id. 249.) Amendments to a lease from one corporation to another, which are fundamental in their nature, to be valid must be accepted by all the stockholders. (*B., etc., R. R. Co.* v. *Dudley*, 14 N. Y. 336; *Mowry* v. *I., etc., R. R. Co.*, 4 Biss. 78; *Clearwater* v. *Meredith*, 1 Wall. 25; *Sage* v. *Dillard*, 15 B. Mon. 353; *White* v. *S. R. R. Co.*, 14 Barb. 560; *Spriggs* v. *West. Tel. Co.*, 46 Md. 67;

*Bove* v. *R. R. Co.*, 10 Ind. 93; *Kenosha R. R. Co.* v. *Marsh*, 17 Wis. 13; *Peoria R. R. Co.* v. *Preston*, 35 Iowa, 115; *Dupont* v. *N. P. R. R. Co.*, 18 Fed. R. 467; *Kent* v. *Quicksilver Co.*, 78 N. Y. 159; *Black* v. *D., etc., Co.*, 24 N. J. Eq. 464; *H. & N. H. R. R. Co.* v. *Croswell*, 5 Hill, 383; 1 Redf. on Rys. [4th ed.] 558; Woods' Field's Law of Corporations, § 362; Taylor on Private Corporations, § 558; Morawetz on Corporations, §§ 54, 197.) The vested rights of every stockholder cannot be destroyed or impaired without his concurrence both as to leasing and to consolidating the railroad in which he is a stockholder. (Laws 1855, chap. 307, 517; 1 Laws 1867, chap. 235, 444; Laws 1879, chap. 503, 553; 2 Laws 1869, chap. 917, 2399.) The plaintiff, as a stockholder, is entitled to invoke the aid of a court of equity to compel the enforcement of her rights. (*Pratt* v. *Pratt*, 33 Conn. 446; *Beers* v. *B. S. Co.*, 42 id. 17, 27; *Scott* v. *Eagle Fire Ins. Co.*, 7 Paige, 198; *Brown* v. *B., etc., R. R. Co.*, 27 Hun, 342; *Park* v. *Grant Locomotive Works*, 40 N. J. Eq. 114; *Carpenter* v. *N. Y., etc., R. R. Co.*, 5 Abb. Pr. [N. S.] 107; *Stevens* v. *S. D. R. Co.*, 9 Hare, 313; *Robinson* v. *Smith*, 3 Paige, 222; *Scott* v. *E. Fire Ins. Co.*, 7 id. 198; *State* v. *Bk. of Louisiana*, 6 La. 745; *N. Y., etc., R. R. Co.* v. *Nickals*, 119 U. S. 296, 304.) The ownership of the certificate with the guaranty thereon entitles plaintiff to maintain this action. (*Leslie* v. *L. S. S. Co.*, 26 Week. Dig. 222; *Mowry* v. *I. & C. R. R. Co.*, 4 Bliss. [U. S. C. C.] 78; *Sellers* v. *Phœnix Iron Co.*, 13 Fed. Rep. 20; *Porter* v. *P. B. S. Co.*, 122 U. S. 269.) The merger agreement of August, 1884, was *ultra vires* the corporation, and was at law wholly void as to all non-assenting stockholders, because it wrought the destruction of the old companies and created a new corporation. (*Peterson* v. *Mayor, etc.*, 17 N. Y. 449; *Martin* v. *Zellerbach*, 38 Cal. 300; *Taymouth* v. *Koehler*, 35 Mich. 22; *Von Schmidt* v. *Huntington*, 1 Cal. 55; *Zabriskie* v. *H., etc., R. R. Co.*, 3 C. E. Green, 193; *Kean* v. *Johnson*, 9 N. J. Eq. 401; *M. R. R. Co.* v. *State*, 29 Ala. 573; *P. S. Lodge* v. *P. S. Lodge*, 16 La. Ann. 53; *Ward* v. *Sea Ins. Co.*, 7 Paige, 274;

*N. Y. M. I. Works* v. *Smith*, 4 Duer, 362 ; Green's Notes Brice's Ultra Vires [2d ed.] 791 ; *C. R. R. Co.* v. *Georgia*, 92 U. S. 665, 670 ; *Shields* v. *Ohio*, 95 id. 319.) By express statutory enactment the merger consolidation was *ultra vires* the corporation, and could not be ratified by the unanimous consent of the stockholders. (2 Laws 1869, chap. 917, 2399 ; Dwarris on Stat. [Potter's ed.] 291, 292 ; 2 Vent. 215 ; *Reg.* v. *Marseek*, 6 T. R. 771.) A corporation cannot become a stockholder in another corporation unless such power is given to it by its charter or is necessarily implied by it. (*Franklin Co.* v. *Lewiston S. Bk.*, 68 Me. 43 ; *Mutual S. Bk.* v. *M. A. Co.*, 24 Conn. 159 ; *Berry* v. *Yates*, 24 Barb. 199 ; *Talmage* v. *Pell*, 7 N. Y. 328, 348 ; *Bk. Commissioners* v. *St. Lawrence Bk.*, 7 id. 513 ; *Leavitt* v. *Blatchford*, 17 id. 521, 530 ; Green's Brice's Ultra Vires, 91 ; Morawetz on Private Corporations, §§ 229, 361 ; *C. R. Co.* v. *Collins*, 40 Ga. 582 ; *Hazelhurst* v. *S. R. R. Co.*, 43 id. 14 ; *Sumner* v. *Marcy*, 3 W. & M. 105 ; Taylor's Law of Private Corporations, § 136 ; *First Nat. Bk.* v. *Nat. Ex. Bk.*, 92 U. S. 122.) The merger agreement was void, being in law the act of the common directors of the two companies, who were more largely interested in the Manhattan company than in the New York company, and were, therefore, ready to sacrifice the latter for their own benefit in the former. (*Metropolitan Co.* v *Manhattan Co.*, 4 Abb. N. C. 251 ; *Goodwin* v. *C. R. & C. Co.*, 18 Ohio St. 169 ; *Heath* v. *Erie R. Co.*, 8 Blatch. 317, 319 ; *Manhattan R. Co.* v. *N. Y., etc., R. R. Co.*, 29 Hun, 309, 313.)

*Julien T. Davies* and *Charles A. Gardener* for respondents. The contract of guaranty stamped upon the certificates of stock of the New York company was a contract between the Manhattan and the New York companies solely, to which the stockholders were not parties or privies, and upon which the plaintiff can have no right of action against either the Manhattan company or the New York company. (5 N. Y. S. R. 60 ; *Harkness* v. *N. Y. E. R. R. Co.*, 54 Super. Ct. 174 ; 55 id. 532 ; *People ex rel. Content* v. *Met. & Man. Co's.*, 26 Hun,

82; *Flagg* v. *Man. & Met. Co's.*, 10 Fed. Rep. 413; *Sche-merhorn* v. *Vanderheyden*, 1 Johns. 139; *Shepard* v. *Shepard*, 7 Johns. Ch. 56; *Lawrence* v. *Fox*, 20 N. Y. 268; *Burr* v. *Beers*, 24 id. 178; *Davis* v. *Morris*, 36 id. 569, 575; *Barker* v. *Bucklin*, 2 Denio, 45; *Dingeldine* v. *Third Ave. R. R. Co.*, 37 N. Y. 575; *Vrooman* v. *Turner*, 69 id. 280; *Garnsey* v. *Rogers*, 47 id. 233, 284; *Hand* v. *Kennedy*, 83 id. 149; *Seward* v. *Huntington*, 94 id. 104; *Todd* v. *Weber*, 95 id. 180; *Wheat* v. *Rice*, 97 id. 296, 301; *Serviss* v. *McDonald*, 107 id. 260; *Met. Trust Co.* v. *N. Y., L. E. & W. R. R. Co.*, 45 Hun, 84; *Merrill* v. *Green*, 55 N. Y. 270; *Simson* v. *Brown*, 68 id. 355; *Arnold* v. *Nichols*, 64 id. 117; *Frank* v. *N. Y., L. E. & W. R. R. Co.*, 44 Hun, 624; 7 N. Y. S. R. 814; *Barlow* v. *Myers*, 64 N. Y. 43; *Edick* v. *Green*, 38 Hun, 202; *Knowles* v. *Erwin*, 43 id. 152.) The plaintiff can maintain no action against the New York company for dividends on his stock, because he has no contract for dividends with said company. (5 N. Y. S. R. 60; *Williams* v. *W. U. T. Co.*, 93 N. Y. 162; *Luling* v. *A. M. Ins. Co.*, 45 Barb. 510; *Karnes* v. *R., etc., R. R. Co.*, 4 Abb. Pr. 107; *Barry* v. *M. Ex.*, 1 Sandf. 280; *Ely* v. *Sprague*, 1 Clark's N. Y. Ch. 351; 2 Waterman on Corp. 149, note 1.) As the complaint contains no allegations of dividends declared by the New York company, plaintiff can recover nothing as a dividend on his stock. (*Williston* v. *M. S., etc., R. R. Co.*, 95 Mass. 400; *Taft* v. *H., etc., R. R. Co.*, 8 R. I. 310; *Crawford* v. *N. W., etc., R. R. Co.*, 3 Jur. 1054, part 1; *Henry* v. *G. N. R. Co.*, 5 id. 284.) All dividends payable on the stock prior to March, 1882, can be collected only by S. T. Russell & Co., the stockholders of record, and cannot be sued for by plaintiff. (*Jermain* v. *L. S., etc., R. R. Co.*, 91 N. Y. 483; *Boardman* v. *L. S., etc., R. R. Co.*, 84 id. 151.) A transfer of stock does not carry back dividends already declared. (Lowell on Transfer of Stock, § 52; *Bright* v. *Lord*, 51 Ind. 272; *De Gendre* v. *Kent*, L. R., 4 Eq. 283; *Hooper* v. *Sage*, 47 Supr. Ct. 77.) The managing agents of a corporation are impliedly

SICKELS—VOL. LXVII.    2

invested with a discretionary power with regard to the time and manner of distributing its profits, and so long as they do not abuse or violate the company's charter, the courts cannot interfere. (*Williams* v. *W. U. T. Co.*, 93 N. Y. 162; *Scott* v. *E. Ins. Co.*, 7 Paige, 198; *Karnes* v. *R., etc., R. R. Co.*, 4 Abb. Pr. 107; *Barry* v. *Mer. Ex.*, 1 Sandf. 280; 1 Abb. Digest of the Law of Corp. 301; 2 Redfield on the Laws of Railways, 335; 2 Waterman on Corp. 149, note 1; *Boardman* v. *L. S., etc., R. R. Co.*, 84 N. Y. 151; *Prouty* v. *Sabine*, 85 id. 272; *Sanders* v. *L. S., etc., R. R. Co.*, 94 id. 641; 5 N. Y. S. R. 60; *Harkness* v. *N. Y. El. R. R. Co.*, 54 Super. Ct. 174.) There is no allegation or proof of a legal demand upon the New York company to pay plaintiff's testator a dividend of ten or six per centum. (*Olcott* v. *T. R. R. Co.*, 27 N. Y. 546–561; *Reid* v. *Bk. of Mobile*, 70 Ala. 199; 1 Waterman on Corp. 469, 470; *State* v. *B. & O. R. R. Co.*, 6 Gill. 303, 364; *Hagar* v. *Union Nat. Bk.*, 63 Me. 508; *Scott* v. *C. R. R. Co.*, 52 Barb. 45; *Jackson* v. *Plank-road Co.*, 31 N. J. L. 277; *Stoddard* v. *Shetucket, etc., Co.*, 34 Conn. 542; *Keppel* v. *P. R. R. Co.*, Chase's Dec., 167; *P., etc., R. R. Co.* v. *Hickman*, 28 Penn. St. 327.) No action on the part of the New York company, or of its officers, or a majority of its shareholders, without plaintiff's consent, could abrogate or affect her rights, or interfere with her power to recover directly for herself against the Manhattan company in a suit at law upon the covenant of a guaranty, if said covenant conferred any right of action upon her. (*Allerton* v. *Belden*, 49 N. Y. 373; *Town of Venice* v. *Woodruff*, 62 id. 462; *Globe Mutual* v. *Reas*, 79 id. 202; *T. B. R. R. Co.* v. *B., etc., R. R. Co.*, 86 id. 107; *Grand Chute* v. *Winegar*, 15 Wall. 373.) Parties to a judgment are not bound by it in a subsequent controversy between each other, as long as they were not adversary parties in the original action. (Freeman on Judgments [Last ed.] § 158; *Minn. Co.* v. *Chamberlain*, 3 Wall. 704.) The directors of the New York company had power to enter into the October agreements without the action of the stockholders. (*Hoyt* v. *Thompson*, 19 N. Y. 207; *McCullough* v. *Moss*,

5 Denio, 566; *Conro* v. *P. H. I. Co.*, 12 Barb. 27; *E. F. Ins. Co.*, 19 Abb. 14; *Elwell* v. *Dodge*, 33 Barb. 339; *Robinson* v. *Bullion*, 11 N. Y. 250; *St. Ann's Church*, 23 How. 285; *Dana* v *Bk. of U. S.*, 5 W. & S. 246; *People ex rel. Content* v. *M. R. R. Co.*, 26 Hun, 82; *Flagg* v. *Man. and Met. Cos.*, 10 Fed. Rep. 413.) Before the court will entertain a bill in equity to decree a voidable contract void, the corporation must elect to avoid the contract. (Blatchford's Rules of the U. S. Cts. 94, 327; *Hawes* v. *Oakland*, 104 U. S. 450; *Bill* v. *W. U. T. Co.*, 16 Fed. Rep. 14; *Detroit* v. *Dean*, 106 U. S. 542; *Dimpfell* v. *O. & M. R. R. Co.*, 110 id. 209.) The New York company is now estopped by lapse of time from avoiding the agreements aforesaid, if they were at any time voidable. (*Union Bk. of Florida* v. *Call*, 5 Fla. 409; *Smallcomb's Case*, L. R., 3 Eq. Cas. 769; *Virgers* v. *Pike*, 8 Cl. & F., 650; *Wentworth* v. *Lloyd*, 32 Beav. 467; *Clegg* v. *Edmonson*, 8 De G., M. & G. 787; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 187; *R. L. R. Co.* v. *Roach*, 97 id. 378, 381; *Dimpfell* v. *O. & M. R. R. Co.* 9 Biss. 127; *Perry* v. *Simpson Mfg. Co.*, 37 Conn. 520; *Rutland, etc.*, v. *Proctor*, 29 Vt. 93; *Hayes* v. *G. G. L. Co.*, 29 Ohio St. 330, 340; *Bradley* v. *Ballard*, 55 Ill. 413; *Farmers' Bk.* v. *D. R. R. Co.*, 17 Wis. 372; *Argenti* v. *San Francisco*, 16 Cal. 255; *Perkins* v. *P. R. R. Co.*, 47 Me. 573; *Hazelhurst* v. *S. R. R. Co.*, 43 Ga. 13.) If the agreements aforesaid be voidable, only a majority of the New York stockholders can elect to avoid them. (*Wallace* v. *L. I. R. R. Co.*, 12 Hun, 460; *Bill* v. *W. U. T. Co.*, 16 Fed. Rep. 14, 19.) The allegations of the complaint are insufficient to raise an issue of fraud, and there is no evidence to sustain them, insufficient as they are. (5 N. Y. S. R. 60; 54 Super. Ct. R. 124; *Smith* v. *G. F. Ins. Co.*, 62 N. Y. 87; *Thompson* v. *Bk. of British North America*, 82 id. 1; *Burnap* v. *Potsdam Nat. Bk.*, 96 id. 125, 131; *Porter* v. *Smith*, 107 id. 531, 534.) The intent to deceive is a necessary element or ingredient of fraud. (*Weed* v. *Case*, 55 Barb. 534; *Marsh* v. *Falker*, 49 N. Y. 562; *Still* v. *Little*, 63 id. 427.) Con-

structive fraud cannot be attributed to acts of directors from the mere fact that they have made or altered leases; they have the absolute power of modifying and making leases and agreements for their corporations, irrespective of the ratification of said leases by their corporations. (*Hoyt* v. *Thompson's Exrs.*, 19 N. Y. 207–216; *Flagg* v. *M. R. R. Co.*, 10 Fed. Rep. 413, 431; *People ex rel. Content* v. *Met.*, etc., 26 Hun, 82.) It is not within the authority of the stockholders to control that power. (*McCullough* v. *Moss*, 5 Den. 566–575; *Flagg M. R. R. Co.*, 10 Fed. Rep. 413–431; *People ex rel. Content* v. *Met.*, etc., *R. R. Co.*, 26 Hun, 82.) The power as vested in the board may be exercised by a majority of the members. (2 R. S. [6th ed.] 391, § 6.) The votes of the common stockholders do not render a contract between two corporations voidable. (*Met. Co.* v *Man. Co.*, 14 Abb. N. C. 287; *Pearson* v. *C. R. R. Co.*, 13 Am. & Eng. R. R. Cases, 101–119.) As matter of law, the will of a majority of stockholders governs in all acts and proceedings within the limits of the act of incorporation. (*E. T. & V. R. R. Co.* v. *Gammond*, 5 Sneed, 566, 571; *Durfee* v. *O. C.*, etc., *R. R. Co.*, 5 Allen, 230; *Bill* v. *W. U. T. Co.*, 16 Fed. Rep. 19; *Wallace* v. *L. I. R. R. Co.*, 12 Hun, 463; *Faulds* v. *Yates*, 57 Ill. 416, 420; *Dudley* v. *K. H. S.*, 9 Bush, 578; *In re St. Mary's Church*, 7 S. & R. 516, 542; *Kean* v. *Johnson*, 1 Stockt. 401; *People* v. *A. & S. R. R. Co.*, 55 Barb. 244, 368.) Assuming that the New York stockholders who had an interest in the Manhattan company were disqualified from voting on the agreements aforesaid, still the stockholders who had no interest in the Manhattan company, constituted a majority *de jure* of the New York company, and a majority of said number legally bound the corporation and each individual stockholder thereof. (*Ex parte Willcocks*, 7 Cow. 402; *Field* v. *Field*, 9 Wend. 394; *M. A. B. Church* v. *B. Church*, 28 N. Y. 649; *Brown* v. *P. M. S. S. Co.*, 5 Blatch. 525; *Craig* v. *F. P. Church*, 88 Penn. St. 45; *Rex* v. *Foxcroft*, 2 Burr. 1017; Kyd on Corp. 401; Boone on Corp. § 65; *Buell* v. *Buckingham*, 16 Iowa, 284; *Cahill* v. *Kal. Ins. Co.*, 2 Doug. 124; *Sargent* v. *Web-*

*ster*, 13 Metc. 497; *Gregory* v. *Patchell*, 33 Beav. 595; *Faulds* v. *Yates*, 57 Ill. 416; *Horton* v. *Bap. Ch.*, 34 Vt. 316; *State* v. *Bender*, 38 Mo. 450.) A majority of the stockholders of the New York company acted within the limits of their power, as fixed by their act of incorporation, when they ratified the agreements of October and November, 1881, and of May and August, 1884. (*Fisher* v. *N. Y. C. R. R. Co.*, 46 N. Y. 644; *Woodruff* v. *Erie R. Co.*, 93 id. 609; *Treadwell* v. *S. Mfg. Co.*, 7 Gray, 393; *In re O. C. R. R. Co.*, 5 Allen, 230; *Flagg* v. *Met., etc.*, 10 Fed. Rep. 413; *Bradford* v. *N. Y., L. E. & W. R. R. Co.*, 48 Hun, 621; 16 N. Y. 208, 212; *Abbott* v. *J. R. R. Co.*, 80 id. 27; *Wehrhane* v. *N. C. & S. L. R. R. Co.*, 42 Hun, 660; 4 N. Y. 541, 551.) Even excluding from the number of New York stockholders that voted in favor of said agreements those that held Manhattan stock, and who were thereby supposed to be disqualified, a majority of the remaining disinterested stockholders of the New York company voted for said agreements, and the will of the corporation was thereby expressed, and the corporation and each individual stockholder thereof were thereby bound to said agreements. (*Ex parte Heath*, 3 Hill, 43; *McNeely* v. *Woodruff*, 13 N. J. L. 353; *Third School District* v. *Gibbs*, 2 Cush. 39; *Christ Church* v. *Pope*, 8 Gray, 140; *People* v. *Pease*, 27 N. Y. 58, 62; *Ex parte Desdoity*, 1 Wend. 98; *Downing* v. *Potts*, 23 N. J. L. [3 Zab.] 66–84; *First Parish* v. *Stearns*, 21 Pick. 148; *State* v. *Thompson*, 27 Mo. 365; *Rex* v. *Vice-Chancellor*, 3 Burr. 1648.) The New York stockholders of record who had no interest in the Manhattan company, and who were not present in person, or represented by proxy at the meetings of October, 1881, of May 6, 1884, and of August 1, 1884, are to be counted in ratification of the action of the majority, and are not in the minority. (*County of Cass* v. *Johnson*, 95 U. S. 360; *Wallace* v. *L. I. R. R. Co.*, 12 Hun, 460; Morawetz on Corp. § 354; *L. & N. R. R. Co.* v. *County Ct., etc.*, 1 Sneed, 630; *Tyler* v. *Taylor*, 10 Minn. 107; *People* v. *Warfield*, 10 Ill. 159; *People* v. *Garner*, 47 id. 246; *People* v. *Wippant*, 48 id. 263.)

GRAY, J. The plaintiff's testator, in March 1882, was the owner and holder of a certificate for one hundred shares of the capital stock of the defendant, the New York Elevated Railroad Company; on the margin of which were engraved the following words. "The Manhattan Railroad Company, for value received, has agreed to pay to the New York Elevated Railway Company an amount equal to ten per cent per annum on the capital stock of the latter company; that is on six and one half million dollars, payable quarterly, commencing January 1, 1880." There was no signature to this marginal writing. The certificate of stock was issued in the name of S. T. Russel & Co., and the plaintiff's testator acquired its possession under an assignment, in blank as to names, etc., printed in the usual form upon its back and signed by S. T. Russell & Co. The plaintiff's testator, in July, 1884, commenced this action, and he seeks therein to obtain a judgment, first, that the New York Elevated Railroad Company be compelled to transfer the stock on its books and to issue in its place to him a new certificate, upon which should be the same words as were upon the margin of the old certificate; second, that the Manhattan Railway Company be compelled to pay to the said New York company an amount equal to ten per cent per annum on the capital stock of the latter company from July 1, 1881, to July 1, 1884; and, third, that out of such payment, the New York company be compelled to pay to him $3,250, "being thirteen dividends of $250 each for the several quarters commencing July 1, 1881, to and including the quarter ending July 1, 1884, together with the interest on the several quarters." The court granted the relief asked for so far as to direct the New York company to transfer the stock and issue a new certificate, but without the marginal words, and to pay the dividends which had been declared thereon, and dismissed the complaint as to the Manhattan company.

In order to better understand the nature of this claim and the grounds upon which are based our conclusions with respect to it, some review of the principal facts and corporate trans-

actions of these two companies; as they appear from the record before us, is necessary.

Though the legal questions presented are grave and of considerable importance as to the parties defendant, they are within a comparatively narrow compass. In May 1879, the defendants the New York and the Manhattan Elevated Railway Companies united with the Metropolitan Elevated Railway Company in the execution of a tripartite agreement, by the terms of which the New York and Metropolitan companies were to lease their railways and appurtenant properties and franchises to the Manhattan company for a term of nine hundred and ninety-nine years. There was reserved in that agreement, as to each of the lessor companies, the obligation of discharging certain liabilities incurred by or possibly accruing to them, and of meeting all claims, in action or otherwise, existing against them on January 31, 1879. On its part, the lessee company assumed certain liabilities of the lessors, agreed to pay an equal amount of first mortgage bonds of each company and to do various other things expressed therein, or in the annexed form of lease; but with its other provisions we are not particularly concerned. In accordance with this agreement the New York company executed the lease, in a form described in the tripartite agreement, to the Manhattan company, in May, 1879. By its provisions, the Manhattan company agreed to pay a fixed sum of $10,000 a year, semi-annually, and by the following article, " guaranteed to the New York company an annual dividend of ten per cent on the capital stock of the New York company, to the amount of $6,500,000, that is to say : " The Manhattan company will, each and every year during the term hereby granted, beginning with the 1st day of October, 1879, pay to the New York company $650,000, free from all taxes, in equal quarter-yearly payments of $162,500 each, * * * and the Manhattan company will, from time to time, execute in proper form a guaranty to the above effect, printed or engraved upon the certificates of stock of the New York company; and, as such

stock certificates are surrendered for cancellation and reissue, will, from time to time, upon request of the holder, renew such guaranty upon all reissued certificates." By a subsequent article, that company further agreed, " in addition to the rental hereinbefore provided," to pay the taxes, etc., which might be imposed upon the lessor company.

A similar lease was executed by the Metropolitan company of its railroad and appurtenant property to the Manhattan company.

In July, 1881, the Manhattan company made default in the payments called for by the leases and the Attorney-General of the State instituted an action in the name of the People, to obtain a decree for the dissolution of the corporation, on the ground, among others, of its insolvency. Other actions were brought, prior to that date, by bondholders of the lessor companies for certain equitable relief; which also were based on such insolvency. The net earnings from the operation of the leased roads had not amounted to what had been expected, as the result of their being placed under one management; and, in addition to that fact, the taxes, which were assessed upon the properties, appear to have been larger in amount than anticipated, and the result was that the Manhattan company was unable to fulfill its engagements. The court, in the People's action, appointed two receivers for the Manhattan company; who continued in possession for several months. Meanwhile, contests were waged for the possession of the leased properties and for the establishment of claims against them, in behalf of the lessee, and negotiations were set on foot for the settlement of these difficulties. In October, 1881, these negotiations resulted in agreements made for the three companies by their boards of directors, by which the leases were modified in certain respects; but the principal features of which were a reduction in the payments required of the lessee company on the capital stock of the lessors, from ten to six per cent, and in making the payments to the New York company preferred over those due to the Metropolitan company. There-

after an order of the court was obtained, in the People's suit, directing the restoration by the receivers to the Manhattan company of the properties in their possession. In November of the same year, the boards of directors of the three companies made an agreement for the transfer, or merger of the capital stock of the lessor companies into that of their lessee. Under its provisions, the stock issued in exchange for the stock of the New York company was to be called first preferred stock and became entitled, from net earnings, to the payment quarterly of dividends, at the annual rate of six per cent., before any other class of stockholders, that is, of the other companies, should receive any dividends. The Metropolitan stockholders were to receive second preferred stock of the Manhattan company, which should be entitled to similar dividends; but only after the payment of full dividends on the New York company's stock, and, whereas the dividends were cumulative on the first preferred stock, for the second preferred stockholders they were not. The exchanged shares were to be held by the Manhattan company uncanceled, as a muniment of title to itself and to the exchanging stockholders. Except as expressed in this merger agreement, the previous agreements and the leases were confirmed. Soon after, the capital stock of the Manhattan company was increased from $13,000,000 to $26,000,000 in due form of law.

At the annual meeting of stockholders of the New York company, in January 1882, on the question of their approval of these October and November agreements, a vote of twenty-five thousand nine hundred and four shares was cast in favor and of seven hundred and thirty-seven shares in opposition. The amount of capital stock of the New York company was sixty-five thousand shares. In January, 1882, a majority of that stock had been converted into the first preferred stock of the Manhattan company and by May 6, 1884, before this plaintiff's testator's demand and the commencement of this action, fifty-eight thousand and eleven out of the sixty-five

thousand shares had been so converted. On January 31, 1882, the Manhattan directors, by resolution, elected to become, *ex officio*, directors of the New York company. Holders of the Metropolitan company's shares, whose interests were only in that company, or were greater in that than in the other companies, were not so well satisfied with the October agreements, and in December, 1882, a month after the election of a board of directors composed of persons other than those in the previous board, a suit was instituted in the Common Pleas of New York by the Metropolitan company, as plaintiff, against the Manhattan and the New York companies, as defendants, to set aside the agreements. A judgment was had in May 1884, declaring those agreements to be null and void as to all the parties thereto. The opinion, upon which this decision was made, was rendered by Judge VAN BRUNT, and is a most able and exhaustive review of the law relating to the government of corporations, their powers and the duties of directors to stockholders. The effect claimed for this judgment by this plaintiff is that, as between these companies, it is *res adjudicata* and restored the contract in the lease of 1879, with the same obligation as though it had never been modified or changed by subsequent agreements. That cannot be so and a consideration of the issues presented and tried will dispose of any such claim and may as well be made at this point.

The Metropolitan company alleged as grounds for its action the lack of power in its directors to modify the tripartite agreement and lease without the consent of its stockholders; the fact that three of its directors were, at the time of making the October agreements, also directors of the Manhattan company; that the personal interests of several of its directors were opposed to the interests of the company, and that its directors were actuated by fraudulent motives. These allegations were met by the denials of the defendants in their answers. As affirmative defenses they set up the October agreements, as having been made in good faith and the making of the merger agreement of November, 1881. The issues thus presented for trial and judgment were between the

Metropolitan company, on the one hand, hostile to the agreements, and the Manhattan and New York companies, on the other hand, uniting in asserting the good faith and validity of all that had been agreed to and done between the companies, and insisting upon the indissoluble nature of the corporate relations which resulted from the making of the October and November agreements.   What was decided was that the October agreements were voidable at the election of the Metropolitan company, on the ground that its directors had no power to make them without the consent of the stockholders, and that, even if they had such power, the presence of directors in the Metropolitan board, who were also directors in the Manhattan company, at the time of the adoption of the October agreements, gave either company the right in equity to repudiate those contracts, although they may have been perfectly valid at law.   The judgment in that action was, that all the parties thereto were relieved from the October agreements.   I do not deny that the legal effect of the judgment in the action referred to was to destroy the contractual relation which had been formed between the companies. Inasmuch as the agreements were tripartite in their nature, a decree relieving one of the parties from their obligations would, of necessity, by destroying their mutuality, annul the whole contract.   But that decree was not *res adjudicata* upon any question arising between the stockholders of the New York company and the Manhattan company, or as to what was the attitude of the New York company towards its corporators, under the agreements of October and of November ; nor did it affect the acts done under them.

The plea of *res adjudicata* is not available to parties in an action, unless the judgment set up was rendered upon issues between them.   There must have been a controversy between the parties, the questions in which were or might, within the issues framed, have been competently adjudged.   But, in the action of the Metropolitan company referred to, there was no litigation between the New York and Manhattan companies, defendants thereto ; nor was there any dispute between them,

or any variance in matters relied upon as defenses to the maintenance of the action.   The only effect which could be given to the judgment in that action was that, for especial reasons applicable to the Metropolitan company, the October agreements, which its directors had entered into as a corporate act, were avoided as to that company.

After the decision in that action, the directors of the New York company, who were and had been since January, 1882, the same as those of the Manhattan company, took action, which resulted in a surrender by the Manhattan company to the New York company of all the property which had been leased to it in 1879, and a retransfer of the exchanged capital stock.   The New York company thus repossessed itself of and operated its railway and properties.   This step was a not unnatural consequence of the judgment in the Metropolitan company's action, annulling the previous agreements between the companies, and seems to have been approved of by the vote of a majority of the New York company's stockholders at the meeting held on May 6, 1884.   On August 1, 1884, agreements were entered into for a new lease of the New York company's property to the Manhattan company, and also for the merger and consolidation of all three companies; but I fail to see how, for the disposition of this case, it is at all necessary for us to consider the detailed steps which led to their making, or the legality or effect of their consummation. The learned trial judge, in refusing to pass upon various requests to find with respect to the evidence as to the negotiations and acts of the directors, after the surrender of the leased property in May, 1884, and as to what was done by stockholders and directors, on August 1, 1884, towards a new lease and the consolidation of the companies, placed his refusal on the ground of their immateriality, and I think he committed no error in so doing.

This suit was commenced in July, 1884, upon a demand made on May 22, 1884, and the claim of the plaintiff does not seem to involve any other examination of this rather voluminous record than such as to see, whether he, as a

holder of the New York company's stock, has been injured in any legal rights and is entitled to equitable relief for their enforcement or protection.   His counsel insists, in that behalf, that the agreement in the lease of 1879, with respect to the guaranty by the lessee company to make payments to the lessor company at the rate of ten per cent annually and which we have cited in full, inured to the benefit of the stockholders in the lessor company; so as to warrant the interposition of a court of equity in his favor, compelling a performance of the agreement in its fullest import.   He says that the consent of the testator's assignor was essential to the validity of the lease of the New York company in 1879, and by that fact, and by his relation as a stockholder, he thus came into privity with the contract.   As a matter of fact, conceded in the case, the lease of 1879 received the assent of the New York company's stockholders; but we do not think the concurrence of stockholders to be an essential condition to the validity of a lease by a railroad corporation of its road to another railroad corporation.   The act of 1839 has more than once been construed to authorize such a lease.   The power therein conferred upon a railroad corporation to contract with another for the use of their respective roads, in such manner as the contract may prescribe, involves the power to make a lease for a term of years.   (*Woodruff* v. *Erie Railway Co.*, 93 N. Y. 616.)

In the case cited, RUGER, Ch. J., delivering the opinion of the court, cites several cases in this court as authorities and shows, by reference to several acts of the legislature, that no subsequent legislation has impaired the powers conferred by that act; but that subsequent legislative enactments recognize the validity of leases made under its provisions.   In *People* v. *O'Brien, Receiver, etc.*, lately decided by us (111 N. Y. 1), it was held that the act of 1839 continues in force and unaffected; with respect to its general grant of power to railroad corporations to make traffic contracts with each other for the use of their respective roads. I think the power conferred by this law is to be exercised as

any other power of a corporation is, where the mode of exercise is not prescribed by the charter or general· laws applicable thereto

All powers directly conferred by statute, or impliedly granted, of necessity, must be exercised by the directors who are constituted by the law as the agency for the doing of corporate acts. The expression of the corporate will and the performance of corporate functions, in the management of a corporation, may originate with its directors, where the law or the by-laws have not expressly restricted their authority and made their action to rest for its validity upon the concurrence of the stockholders, by previous action or subsequent ratification. Within the chartered authority they have the fullest power to regulate the concerns of a corporation, according to their best judgment, and contracts, which the corporation could legitimately make, come within the scope of the ordinary powers of corporate management. (*Leslie* v. *Lorillard*, 110 N. Y. 536.) The duties of directors are of the most responsible kind, and it is in the purview of the law that they should be held to a full accountability for their acts to the stockholders, towards whom they occupy the relation of trustees, with all which that term implies of power and responsibility. In the management of the affairs of the corporation, they are dependent solely upon their own knowledge of its business and their own judgment as to what its interests require. · The error, in the supposition that, in the case of a railroad corporation, a lease of the railroad property requires for its validity the authorization of stockholders, has its source in the idea that such an act involves an organic change, which either the law inhibits or, if it permits, vests the power to make only in the corporators, either by express enactment, or by necessary or natural implication. If such a contract, as the lease by a railroad corporation to another of its railway, was not within the powers expressly conferred by general laws, by which, as by the charter, the corporate powers are measured, it would be *ultra vires* and could not be made at all. But, as the act of 1839 authorizes the making of such a contract, and the law does not

regulate the manner of making it, or impose restrictions with respect to it, I think it must logically follow that the power to make it is, like all other general powers of management, lodged in the directors. They must exercise all the powers of a corporation, subject to the general law and to the by-laws of the company, and, where they act in good faith and without fraud or collusion, their action is conclusive upon the corporation. As agents of the corporation, we must find the extent of their powers by an examination of the laws under which it was created and exists. Those laws, in defining the powers of the corporation, define the scope of the directors' powers to act for it. Judge COMSTOCK, in *Hoyt* v. *Thomson's Executor* (19 N. Y. 216), said : " The board of directors of a corporation do not stand in the same relation to the corporate body which a private agent holds towards his principal. In the strict relation of principal and agent, all the authority of the latter is derived by delegation from the former.   *   *   *   But in corporate bodies the powers of the board of directors are, in a very important sense, original and undelegated. The stockholders do not confer nor can they revoke those powers. They are derivative only in the sense of being received from the state in the act of incorporation. The directors convened as a board are the primary possessors of all the powers which the charter confers.   *   *   *   "

It is difficult to find a solid foundation for the argument which denies to the directors the power of making a contract, which the law expressly permits the corporation to make, without the authorization of the stockholders. If it is deemed to be too extensive a power to be vested in the directors and dangerous to the rights of the stockholders, in the possibilities of fraud, it is for the legislature to interfere and prescribe regulations for its exercise. What we hold here is, that a contract for the leasing of one railroad to another is within the original powers of a board of directors to make ; because it is a power conferred upon the corporation by the legislature, which lodges primarily in its directors ; to be exercised, when, according to their best judgment, the needs or interests of the

corporation require it.   What business a corporation can do
within its chartered limits and in or about that business, by
statutory authority, its directors hold a delegated power from
the legislature to do for it.   The fact that in this case the assent
of the stockholders was secured to the lease does not affect the
question.   It is a very proper and reasonable precaution to
take, in view of its being an important disposition of property
and one which, I should think, would naturally be taken.

It follows from what I have said, that the plaintiff's theory
of the privity and relations of his assignor to the lease of 1879,
and of benefical rights accruing thereby to and enforceable
by him, is untenable.

Regarding, then, the lease itself and the so-called guaranty
which is contained among its provisions, I find therein no con-
tract made with individual stockholders, but only one made
with the New York company, which stipulates for the pay-
ment of a sum of money equal to ten per cent upon the capital
stock of that company.   There is no contract to pay ten per
cent dividends to individual stockholders upon their holdings ;
nor any contract that the New York company will pay it out in
the shape of ten per cent dividends to its stockholders.   Pay-
ments under that contract are to and for the lessor corporation
and go into its treasury, as would any other moneys or revenues
derived from, or produced by corporate property.   The state-
ment upon the certificate of stock, which the plaintiff attaches
such importance to, of itself, certainly, is no agreement by the
Manhattan company ; for it is not even signed.   On its face,
it only purports to be a statement of a fact, having reference
to an agreement made with the New York company.
Undoubtedly the effect of this statement may have been to
give an enhanced value to the shares of stock of that company
in the market ; not because the purchaser was buying securities
on which were guaranteed to be paid to the holder ten per
cent dividends, but because it conveyed information to those
proposing to invest, that a fund had been provided for, by
agreement, out of which dividends might be paid.

The knowledge was communicated thereby as to the amount

of rental moneys or revenues, which the company was in receipt of and which were available for the declaration and payment of dividends. Such a statement would tend to give confidence to investors and a market-value to the securities. The certificate of stock in *Boardman* v. *Lake Shore & Michigan Southern Railway Company* (84 N. Y. 157), read that the stock was entitled to dividends at the rate of ten per cent per annum, and at the top of the certificate were the words, " Guaranteed ten per cent stock." The interpretation given was, that the dividends were not only preferred, but, being guaranteed, were to be paid before any dividends were divided upon the common stock. In that case resort to the evidence of the resolutions and proceedings of the company was deemed competent, to show the real character of the corporate transactions underlying the issue of the stock, and which the certificate of stock to some degree evidenced. Miller, J., in his opinion in that case, has cited a number of authorities warranting such resort in cases relating to the power to create preferred or guaranteed stock. In the stock certificate in *Barr* v. *New York, Lake Erie & Western Railroad Company* (96 N. Y. 444), the obligation of the Erie Railway Company ran to the " holders " thereof. In the present case, nothing in the language of the certificate imports any agreement with its holder for the payment of any dividends whatever ; and if we resort to the evidence of the corporate proceedings, we find none giving him a right to dividends in the future, or creating an obligation enforceable by him for the payment of dividends upon his stock. Judge Ingraham, in his able opinion in *Harkness* v. *Manhattan Elevated Railway Company* (54 Super. Ct. 174), a case involving a similar question, analyzes the agreement in the lease in question. He held it gave no cause of action against the Manhattan company to recover the amount to be paid to the New York company, and, among other things, said : " The agreement is to pay a certain sum of money to the corporation, the New York company. The sum is fixed at ten per cent of the out-

standing stock of the New York company. Nothing was to be paid to the individual stockholders, nor did the Manhattan company in any way agree that the stockholders in the New York company should receive the money it agreed to pay to the New York company, or that such money should be used for the purpose of a dividend on the stock of the New York company. * * * As soon as the money was paid to the New York company it became the property of the corporation, liable for its debts, and the stockholders had no claim to it until by some act of the corporation it had been appropriated to them. There was no agreement of the New York Company that the money to be received should be paid to its stockholders, and there was, therefore, no obligation on the part of the New York company to its stockholders which the Manhattan company undertook to discharge."

This sums up the whole matter clearly and well, and amplification seems to me needless. In *Flagg* v. *Manhattan and Metropolitan Elevated Railroad Companies* (20 Blatchf. U. S. C. Ct. 142), Justice BLATCHFORD held, similarly, that the guaranty here was not to the stockholders severally, but to the corporation.

Within the principles of adjudged cases in this court, where the plaintiff seeks to base his right to maintain his action against a third party upon a contract made between that party and another, it must be one made or intended for his benefit. Such a beneficial intent must be clearly found in the agreement. ( *Wheat* v. *Rice*, 97 N. Y. 296 ; *Vrooman* v. *Turner*, 69 id. 280 ; *Barlow* v. *Myers*, 64 id. 43 ; *Lawrence* v. *Fox*, 20 id. 268.) The present case does not fall within the principle of the decision of *Schemerhorn* v. *Vanderheyden* (1 Johns. 139), that " when one person makes a promise to another for the benefit of a third person, that third person may maintain an action on such promise." That decision was based on the case in the King's Bench of *Dutton* v. *Pool* (2 Lev. 210), and of subsequent English cases following its authority. But in all of the cases which I have examined, where the action was sustained, the facts showed

that the promise clearly was for the third person's benefit,. and made with that distinct intention.

If this agreement in the lease, for the payment to the New York company, annually, of a sum equal to ten per cent on its capital stock, is not one which gave the plaintiff any right of action against the Manhattan company, he is equally without any right to maintain an action upon it against his own company for the payment of dividends. A shareholder in a. corporation has no legal title to the property or profits of the corporation until a division is made or a dividend declared.. (*Jones* v. *Terre Haute, etc., R. R. Co.,* 57 N. Y. 196;. *Boardman* v. *Lake Shore, etc., R. Co., supra.*) He acquires. no right or title to the accumulated gains from the revenues of the corporation, which entitles him to sue for his. aliquot share of dividends. Until divided by the directors or· trustees of the corporation, all of its property is held in joint. ownership by the corporators, and no several right is possessed by the individual stockholder, until after a dividend is declared.

The declaration of a dividend from a surplus, or the. division of profits is within those discretionary powers of the directors or trustees, which will not be controlled by the. courts. ( *Williams* v. *Western Union Tel. Co.,* 93 N. Y. 162.) Nor does any obligation exist here on the part of the New York company to pay a dividend, which plaintiff can enforce performance of, in equity. The moneys, which were payable by the Manhattan company, became the property and assets of the New York company and were within the control and administration of the directors, for the needs and in the. interests of the corporate body.

The next step brings us, then, to the agreements of October, 1881, by which the leases were modified, in the principal feature of the reduction of the payments agreed to be made, from ten to six per cent. About this action of the directors little need be added, in view of the previous discussion of the extent of their powers. We hold that it was quite competent for them to make those agreements without any concurrent action or ratification by the stockholders. No fraud is found

or proven against them in taking this action, and it seems not an unreasonable or an improper exercise of business discretion, in view of the embarrassments in which the insolvency of the Manhattan company had involved itself and its lessors. To have, in good faith and with apparent reasons, agreed to reduce the amount of moneys payable under the lease by their company, was not an act in excess of the power of the directors, or one voidable at the instance of the stockholders. It was as much within their province and authority and as much a part of the ordinary business of the corporation, as would be the reduction of the interest secured in a bond to the corporation, or the rent reserved in a lease of some building, or any other act lying in the exercise of business judgment.

The question of the exercise of such a power of management must be left to the honest and fair business discretion of the board of directors, and the only inquiry by the stockholders could be as to whether there was any fraud by which assets were wrongfully diverted. They must be presumed to act for the best interests of the corporation and to give to the management and disposition of its property their best judgment. But when, subsequently, the agreement of November, 1881, for the merger or transfer of the capital stock of the lessor companies into that of the lessee was, as to the New York company, given practical effect, by the exchange of upwards of fifty-eight thousand shares out of a total of sixty-five thousand shares, that fact, under any aspect of the case, expressed the decided acquiescence of nearly nine-tenths of the corporators in what had been done. While the action of other shareholders may not, in the merging of their stock, affect any legal rights of the non-merging shareholders, it may not improperly be referred to, in the endeavor to discover the sentiments of the general body of corporators as to corporate action taken by their directors. The appeal to equity, when the acts complained of are within the powers of directors and apparently uninfluenced by corrupt motives or personal interests adverse to those of stockholders, ought, at least, to be justified by some

showing that these acts were improper within the belief of a fair proportion of the body of stockholders.

Coming, then, to the condition of affairs, which followed upon the decision of Judge VAN BRUNT being known, we do not find in it any origin for this action by the plaintiff. In May, 1884, the stockholders of the New York and Manhattan companies approved agreements for the surrender to the New York company by the Manhattan company of the leased property and for the retransfer of the stock, exchanged for the stock of the New York company.

Although Judge VAN BRUNT's decision was rendered upon the complaint of the Metropolitan company, and avoided the October agreements as to that company, it so affected the contractual relations of all of the companies as to seem to make some action necessary. It had no such effect upon the New York company's stockholders as to avoid those agreements; and no action had been, nor, in our opinion, could have been taken by the company, or its stockholders, to annul the October agreements. The stockholders could not be heard to say that they acquired any rights under that judgment with respect to the past. It is sufficient that such action was deemed necessary, as was had in May, 1884, for the severance of the contractual relations established by the lease, and it was a matter, we think, which was also within the exercise of an honest discretion by the directors. Although not legally requisite, their action was approved by the great majority of the votes cast on May 6, 1884, by the holders of the New York company's stock. I do not see, however, that much discussion upon the action taken in May, 1884, is called for under the view taken of the plaintiff's rights in this opinion. The gravamen of his complaint is, that the contract in the lease of 1879 inured to his benefit, and could not be discharged or modified by agreement between the companies, and is one which he can enforce; and that, when he commenced his suit, that contract was in full force; and that the New York company is entitled to recover from the Manhattan company the ten per cent payable under its provisions since July, 1881. I

have undertaken to show how he is in error in the proposi-tions on which he claims a right to maintain his action. When he commenced his action in July, 1884, his company had competently resumed the possession of its railroad properties. It had then no claims against the Manhattan company for any differences between the payments guaranteed to it in the lease of 1879 and those provided to be made by the October agreements.

As to the New York company, in our opinion, those agreements were valid and binding when made, and, being acted upon and acquiesced in subsequently, the stockholders are without any legal or equitable cause of complaint. The plaintiff has altogether failed to show any ground for the interference of the courts. He bought the stock with full knowledge of what had taken place, and this fact, in connection with an absence of legal grounds for the maintenance of an action, deprives his appeal of all merits.

The judgment appealed from should be affirmed, with costs.

All concur; RUGER, Ch. J., in result.

Judgment affirmed.