ANTHONY et al. v. AMERICAN GLUCOSE CO.

(Supreme Court, General Term, Fifth Department.   January 18, 1893.)

CORPORATION—FORMATION OF NEW COMPANY—RIGHT TO STOCK.
    An agreement made by several corporations provided for the formation of a new corporation, which was to have all the property of the old ones, and was to pay for the same in stock, which was to be allotted to such corporations.   *Held* that, as the old corporations were thus practically dissolved, the stockholders thereof might, notwithstanding the absence of any contract relation between them and the new corporation, move directly to compel delivery of the stock to them.

Appeal from judgment on report of referee.

Action by Susan B. Anthony and Mary S. Anthony against the American Glucose Company.   From a judgment entered on report of a referee, dismissing complaint, plaintiffs appeal.   Reversed.

Argued before DWIGHT, P. J., and MACOMBER, J.

John Van Voorhis, for appellants.
John G. Milburn, for respondent.

MACOMBER, J.   This action was brought to compel the defendant to issue to the plaintiffs certificates of the defendant's stock, and to recover the amount of certain dividends declared since the year 1883, together with other earnings properly distributable upon the plaintiffs' stock, though not declared as dividends.   On and prior to the 21st day of February, 1883, the plaintiffs were the holders of 40 shares of the capital stock of the Leavenworth Sugar Company; and, in the year 1889, by assignment from Daniel R. Anthony, they became the owners and holders of 50 other shares of such capital stock, making 90 shares in all, which they now possess.   There existed on the 21st day of February, 1883, a corporation, organized under the laws of New Jersey, known as the Firmenich Sugar Refining Company, having its principal office in the city of Buffalo, N. Y.; and the Buffalo Grape Sugar Company and the American Grape Sugar Company, each of which was organized under the laws of the state of New York, having, respectively, their principal business in the city of Buffalo; the Peoria Sugar Refinery, a corporation organized under the laws of Illinois, having its principal office in Peoria, Ill.; and the Leavenworth Sugar Company, organized under the laws of Kansas, having its principal office in Leav-

enworth, Kan.   Each of these corporations was the owner of a plant for the manufacture of glucose and grape sugar, and each of them was engaged in the business of making and selling those articles.   On the 21st day of February, 1883, these five corporations entered into an agreement, in writing, with the assent of all the stockholders of each of them, including the plaintiffs and their assignor, Daniel R. Anthony, for the formation of a new corporation, to be organized under the laws of the state of New Jersey, to be called the American Glucose Company, with a capital stock of $15,000,000, divided into 150,000 shares of the par value of $100 each.   That company is the defendant.   By this agreement, all the real estate, buildings, engines, boilers, tools, machinery, and fixtures, including everything properly covered by the description of "plant," and all horses, mules, carts, wagons, harnesses, sleighs, and the appurtenances thereof, together with all letters patent and licenses, rights, trade-marks, and contracts, of every nature, belonging to each of the parties, was to be vested in the new corporation, by proper instruments and by perfect title, by the 10th day of March of that year, or as soon thereafter as possible.   The new corporation, the American Glucose Company, the defendant, was, by the terms of the agreement, vested with a perpetual license to use any processes or machinery in use in any of the factories of the five above-mentioned corporations, whether owned by such corporations or by any stockholder thereof.   Of the capital stock of the defendant, 125,000 shares, being at par $12,500,000, were allotted to be applied towards the acquisition of the property of the five corporations, and were to be divided as follows: 25,000 shares to the Firmenich Sugar Refining Company, and 100,000 shares to the remaining four corporations; the residue of the stock, namely, 25,000 shares, was to be retained in the treasury of the defendant.   The defendant became the purchaser, in pursuance of this agreement, of all of these plants, properties, rights, and franchises, together with the materials and supplies, exclusive of the manufactured stock and stock in process of manufacture, of each of these five corporations, at the current market value thereof.   It had also the right to purchase the material in process of manufacture in each of these factories, by paying therefor at the rate of 2½ cents per pound, reduced to finished, merchantable goods, with a gravity of 40 deg. Beaume, taken at a temperature of 100 deg. Fahrenheit, together with all manufactured merchantable goods, inclusive of starch in the starch department of the Buffalo Grape Sugar Company, at a given price.   A clause was inserted providing for the contingency of opposition to this scheme by any stockholder of any of the five old companies to this arrangement, but no opposition seems ever to have been made by any of the stockholders.   Provision was made for a working capital of the defendant in the sum of at least $1,000,000, for which bonds were to be issued, bearing interest at the rate of 7 per cent. per annum, payable semiannually, in the sum of $100 each, or multiples thereof, amounting in all to the sum of $1,250,000.   Payment of these bonds was secured by mortgage of the new company upon, all and singular, the property acquired of the old companies, or to be acquired thereafter.   The de-

fendant assumed, by this agreement, all contracts theretofore made in good faith, by any of the five corporations, for the sale of glucose, syrup, grape sugar, starch, or feed, but did not assume any contracts for the sale of mixed or mixing sugar, or any contract involving the testing of any patents or improvements. It also assumed any or all contracts theretofore made in good faith by any of the five corporations or by Cicero J. Hamlin, William Hamlin, and Harry Hamlin, or any of them, for the services of any employe, agent, or broker, in the factories of either of said corporations or in their business. This agreement, which contained other provisions, not necessary to be recited in this connection, was consummated on the 17th day of March, 1883, by proper transfers and conveyances executed by these five corporations to the defendant, covering all property, real and personal, of the character and description above mentioned, and thereupon the defendant became the absolute owner thereof.

The learned referee has found as a fact that the defendant issued and delivered to the Firmenich Sugar Refining Company 25,000 shares of its capital stock, and to the Buffalo Grape Sugar Company, the American Grape Sugar Company, the Peoria Sugar Refinery, and the Leavenworth Sugar Company, the 100,000 shares of its capital stock, as provided for in the contract. But this finding, so far as it relates to the Leavenworth Sugar Company, is not supported by the evidence, in the broad sense in which the finding is made. It is necessary, therefore, to ascertain in what way and to what extent, if any, this important finding is supported by the facts; for, if the Leavenworth Sugar Company had actually received all of the stock of the defendant to which it or its stockholders were entitled under the agreement, and the same had been delivered in good faith, to wit, as an existing corporation having functions to perform, and resting under obligations and duties to stockholders, it might, indeed, be true, as the learned referee has declared in his opinion, that the remedy of the plaintiffs was not to be sought in an action against this defendant, but in an action against the Leavenworth Sugar Company, to compel it to turn over to them their proportionate share of the capital stock of the defendant, so received under the agreement. But it is shown, and the fact is found by the referee, that Cicero J. Hamlin, William Hamlin, and Harry Hamlin were the owners of all the capital stock of the American Grape Sugar Company and of the Buffalo Grape Sugar Company, and of all of the stock of the Peoria Sugar Refinery, excepting a small portion thereof owned by one Edward F. Easton, and of all the capital stock of the Leavenworth Sugar Company, excepting a small portion thereof which was owned by Mr. Locke, and excepting, also, the 90 shares which were owned by the plaintiffs and their brother Daniel R. Anthony. The whole of the capital stock of the Leavenworth Sugar Company was $150,000, at par, in shares of $100 each. William Hamlin was at all of these times, and for years afterwards, the secretary of the American Grape Sugar Company, and secretary and treasurer of the Buffalo Grape Sugar Company, the secretary and treasurer of the Peoria Sugar Refinery, and the secretary and treasurer of the Leavenworth Sugar Company. The Messrs. Ham-

lin arranged, in a manner satisfactory to Locke and Easton, for the number of shares of the new company which they should receive in place of those then held by them.    They failed, however, to make any effective arrangement with the plaintiffs, or with Daniel R. Anthony, in this regard.    This failure to bring about an adjustment with the Anthonys arose from the fact that the Messrs. Hamlin insisted, as a condition of a delivery to them of their share of the defendant's stock, that the Anthonys should pay the sum of $11,813.78, being, as was claimed by the Hamlins, an equitable proportion which their stock bore to the whole of the indebtedness of the Leavenworth Sugar Company, which, as they averred, amounted to $196,896.48.    But the evidence adduced to establish such a large indebtedness is very meager, as the referee holds, and is by no means satisfactory.    The referee's finding upon this last-named matter is ambiguous.    If he intended to decide, as a matter of fact, that Daniel R. Anthony had agreed with the Hamlins to surrender the 90 shares of stock, and pay the $11,813.78, and to receive therefor 900 shares of the capital stock of the defendant, we do not think he is supported by the evidence.    It is true that the Messrs. Hamlin assumed that Daniel R. Anthony and his sisters would act in the premises under their dictation, as the other stockholders of the old companies had acted.    There was, accordingly, issued by the defendant a certificate for the 900 shares of its capital stock in the name of Daniel R. Anthony; but it was received by William Hamlin, who refused to surrender it, or any part of it, to Daniel R. Anthony, who was acting for his sisters as well as for himself, except upon the conditions above mentioned.    But the name of Daniel R. Anthony was entered upon the books of the defendant as one of its stockholders to this amount, and notices of subsequent dividends were from year to year sent to him, as such stockholder. Certificates of stock of the defendant were issued to the stockholders of the Firmenich Sugar Refining Company in exchange for their shares in the last-named corporation.    This was done, as is found by the learned referee, upon the certificate or statement made by the Firmenich Sugar Refining Company.    In the month of October, 1883, after a dividend of $2\frac{1}{4}$ per cent. of the capital stock of the defendant had been declared, and notice thereof given to Anthony, payment of Anthony's share was withheld by the direction of the Messrs. Hamlin, subject to an expected settlement between them and Anthony.    After the final failure of such negotiations for a settlement, the Messrs. Hamlin caused the said dividend declared upon the said certificate of stock of the defendant, issued in the name of Daniel R. Anthony, to be credited to themselves, in three parts,—one third each to Cicero J. Hamlin, William Hamlin, and Harry Hamlin.    Subsequently the capital stock of the defendant was reduced from $15,000,000 to $1,500,000, notice of which was given to Anthony, with a request that he authorize the cancellation of the 900 shares of the stock which stood in his name, and take in place thereof 90 shares of the reduced capital stock; but to this notice and request Anthony paid no attention.    Afterwards, other dividends were declared by the defendant upon this capital stock, notices of some of which were given to Anthony, and the same have remained unpaid, and have been

held in the defendant's account known as "unpaid dividend account." All other stockholders of the defendant have been paid their dividends. The Messrs. Hamlin acquired their stock and controlling interest in the Leavenworth Sugar Company on the 5th day of June, 1882, and immediately thereafter, at a meeting of the stockholders of that company held at Leavenworth, Kan., they caused themselves to be elected officers and directors of that company. Immediately after their election as trustees, they adjourned their meeting as directors of said company to their office in Buffalo, N. Y., where a meeting was held by Cicero J. Hamlin, William Hamlin, Harry Hamlin, and Franklin D. Locke, as directors of said company, on the 10th day of June, 1882, and where all the subsequent meetings of the directors of the said company were held, and where all the meetings of the said four "Hamlin Companies," so called, were held after the Messrs. Hamlin gained control of them. But no formal meeting of the directors of any of the four Hamlin Companies has been held since the making of the agreement by the five corporations to form a new company, and the transfer of the property of said companies to said defendant in pursuance of said agreement of February 21, 1883.

The learned referee has dismissed the complaint of the plaintiffs upon the ground that they cannot maintain this action because no contract relations of any nature exist between the defendant and any of the stockholders of the five corporations entering into the agreement for the organization of the defendant. He says:

"The American Glucose Company became a medium through and by which the five companies effected a reorganization, not by a consolidation of the several companies and a surrender of their franchises, but by creating another, separate and distinct, corporation or entity, in which it was agreed that the title to the several properties of the parties should be vested, and to which the business of the several companies should be transferred, and for which each should receive the agreed proportion of the stock of the new company,—the Firmenich an agreed portion, and the four companies, collectively, another portion,—which, as between them, the law should imply an agreement to divide the same equitably, or in proportion to the value of the property and business each conveyed to the defendant. By the terms of the contract to which the defendant corporation, when created, became a party, it was required to issue and deliver its certificates of stock to the Firmenich and to the other four companies in proportions agreed. It could not deal with the stockholders of the five companies, as such, nor issue its stock to them. Its contract to take the property of the five corporations, and deliver stock in payment therefor, was solely with them, as such. The rights of the stockholders in the property of their corporation is well settled. They have no right to any of the property of the corporation, except in the form of dividends declared by the directors, or, in case of dissolution, to receive or obtain what may remain of the assets after a settlement of its affairs. For any injury impairing the value of the shares of the stockholders through the invasion of their corporate or collective rights, their remedy must be obtained by or through the corporation. Mor. Priv. Corp., (chapter on rights and remedies of shareholders.)"

The referee also cites the cases of Beveridge v. Railroad Co., 112 N. Y. 1, 19 N. E. Rep. 489, and Harkness v. Railway Co., 54 N. Y. Super. Ct. R. 175. Upon these authorities he chiefly relies for his ultimate conclusion.

Under ordinary circumstances, and in the usual course of corporate business and dealings, the views expressed by the learned referee, touch-

ing the rights of stockholders, may be assented to. Where two or more corporations make contracts with each other to carry on business, and while the corporations continue to perform their legitimate functions, a stockholder of one of them has not the right to intervene for the purpose of obtaining from the corporation of which he is not a stockholder what might come to him as a stockholder of one of the contracting parties. But this principle, and the authorities above mentioned, cited by the referee, are applicable only when the contract contemplates the continued existence of the contracting parties, and not where, by the very terms of the agreement, the contracting parties should pass out of existence entirely as corporate entities, and their property, business, and franchises be transferred bodily to the new creature contemplated by the agreement. This agreement, as between the contracting parties and their stockholders, on the one hand, and the defendant, on the other hand, provided for, and was conditioned upon, the nonuser of the franchise of each of the five old corporations, and was a blotting out, by contract, of their existence. It was followed by an actual discontinuance of the business of each of them. After the absorption by the defendant, through the Messrs. Hamlin, of the Leavenworth Sugar Company, in 1883, down to the beginning of this action, there was no meeting held of the stockholders or directors in the state of Kansas or elsewhere; but the company was treated by the Messrs. Hamlin and by this defendant as something that had ceased to exist, as a matter of fact. All the parties to this action have assumed throughout the validity of the agreement of February 21, 1883, and as effective, binding, and unimpeachable, the subsequent transfers and conveyances of the property and franchises of the old corporations to the defendant, made in pursuance of that agreement. The action and defense are both based upon the assumption that, as there was no reason for the contracting parties longer to exist, they had in fact ceased to exist, for all business purposes. But it is argued that, if there is any remedy over against any parties, it is against the Messrs. Hamlin or against the Leavenworth Sugar Company, as a corporation. But the difference between the operations of this defendant and those of the Messrs. Hamlin, in the premises, is not very marked. These gentlemen have had full control of the defendant since its incorporation, as they had of four out of the five contracting parties before the defendant was brought into existence. If the attitude and the argument of the defendant in this case can be maintained, then, for aught that appears, the defendant could not be compelled to issue the stock to anybody. It is idle to contend that any of the "Hamlin Companies," as they are called, would take any action to compel this defendant to deliver over any of the stock. Why, then, should the plaintiffs be turned over to the necessity of suing the directors of the Leavenworth Sugar Company for misconduct, or to compel the Hamlins to distribute the stock which has already been issued by it to Mr. Anthony, but which it now refuses to deliver?

It is further argued by counsel that the referee has found as a fact that the 100,000 shares of the defendant's stock which the four Hamlin companies collectively were entitled to were delivered to those companies,

in performance of the contract, and that consequently the obligation of the defendant under that contract had been performed. This we deem to be a vital error. We need, however, concern ourselves only with the stock that, under the agreement, was to be distributed to the stockholders of the Leavenworth Sugar Company. The officers of the defendant, namely, the Messrs. Hamlin, have made a practical construction of this agreement entirely different from the contention now made by counsel; and this practical construction accords with its true construction. It is entirely erroneous to suppose that the stock of the defendant was to be delivered to the old corporations as owners; for the latter were not entitled to it, and never claimed it, and they could not have held it for a moment, as against their respective stockholders. Article 3 of the agreement contains the provision for the distribution of such stock. By its terms the stock of the new company was to be "allotted and applied towards the acquisition" of the property and franchises purchased. Twenty-five thousand shares were "allotted" to the Firmenich Company, and 100,000 shares were "allotted" to the four other parties to the agreement, merely as a convenient mode of designating and identifying, by the name of their companies, the stockholders to whom such stock was to belong. This view finds much support in the sixth item of the agreement, where it is provided that, in case of opposition of any stockholder of either company to the transfer of that company's property and franchises to the defendant, the stock otherwise distributable to that company shall be withheld; also, in item second of Schedule A, annexed to the agreement, where individuals, and not the old corporations, were assumed to be the stockholders of the new company. But perhaps a still stronger corroboration is found in defendant's Exhibit 4, signed by the Messrs. Hamlin, being the proposed contract with Daniel R. Anthony, and where it is declared by the Hamlins as follows:

"Of the stock of the American Glucose Co., issued for division among the stockholders of the Leavenworth Sugar Co., Mr. Anthony shall receive nine hundred (900) shares in full of the interest represented by him and his family in the stock of the Leavenworth Sugar Co., being ninety shares of such stock of the Leavenworth Sugar Company"

The defendant actually entered the stock to Anthony upon its books, thus taking the primary step towards carrying to a practical conclusion the necessary result of the agreement of February 21, 1883. Shall it now be heard to say that it is under no obligation to deliver the stock, when it has already entered it upon its books as belonging to Anthony, declared dividends upon it payable to Anthony, and when its refusal to deliver it has been placed solely upon the nonpayment by Anthony of the sum of $11,813.78, alleged to be equitably owing by Anthony, not to the defendant, but to a third party? For all practical purposes of this litigation, the defense comes down to this: That the defendant had a right, through its officers, to refuse to deliver to Anthony his stock until the latter had paid an indebtedness which had been incurred by the Messrs. Hamlin through the name of the Buffalo Grape Sugar Company. The plaintiffs' case need not necessarily be worked out under the doctrine of Lawrence v. Fox, 20 N. Y. 268, as the respondent's counsel fears may

be attempted. Nor is the idea tenable of a valid consolidation of the five corporations into the defendant company, by which the stockholders of the old companies became stockholders of the new company; for the reason, as stated by the referee, that there can be no consolidation of corporations de jure except by virtue of some enabling statutory law. Mor. Corp. § 940, and cases there cited.

The ground of the plaintiffs' right to recover is that by the terms of the agreement of the 21st of February, 1883, the five corporations should in fact go out of existence for the benefit of the defendant, when organized, and that the defendant is conclusively bound by that contract, inasmuch as it received all the property and franchises of the five old corporations, with full knowledge of the agreement; thus by its own act making the agreement effective. The defendant should now be held to be estopped to claim that any of the old corporations are in existence for any purpose. Under the circumstances disclosed, its defense is technical and unconscionable, and ought not to prevail, unless there be some inexorable rule sustaining it; and there is no such rule applicable to this case, because the defendant, by its acts, has put it out of its power successfully to invoke it.

The rights of the several stockholders of such companies were, by necessary implications, preserved by the same agreement. For nearly 10 years the old companies have ceased to exist. Nobody connected with these transactions had claimed that they existed for any purpose until this defense was made,—that Daniel R. Anthony should not recover the stock allotted to him unless he pay to the Hamlins the $11,813.78. The case does not, therefore, come under the general rule, as stated by the referee, but under a different principle, namely, that where a corporation is created on the practical dissolution of other corporations, with the consent of the latter's stockholders, but without any further surrender of their rights, and under circumstances showing that such rights were actually to be preserved, it may be called upon to respond directly to the stockholders of the old company. It is true that the Leavenworth Sugar Company has not been dissolved by any judgment of a competent court; but, for the purposes of enforcing the contract in question, it must be deemed to be dissolved, so far as the defendant can be heard to say. Treating the case, therefore,—as, under the facts, it must be treated,— as one to compel the defendant to deliver to the plaintiffs the 90 shares of the reduced capital stock standing in the name of Daniel R. Anthony, and for the payment of accrued dividends and distributable earnings, it may be maintained. The judgment appealed from should be reversed, and a new trial granted.

Judgment appealed from reversed, and a new trial granted, with costs to abide the event.