THE PROSPECT PARK AND CONEY ISLAND RAILROAD COMPANY, Respondent, *v.* THE BROOKLYN, BATH AND WEST END RAILROAD COMPANY and Another, Appellants.   Action No. 1.

*Lease of a railroad — when valid — policy of the State of New York in respect thereto — chapter 218 of 1839.*

Although it is true, as a general proposition, that a *quasi* public corporation cannot by contract relieve itself from its duties to the public or its obligation to operate its franchise and exercise its powers for the public benefit, yet such proposition is subject to qualification, and, under the provisions of chapter 218 of the Laws of 1839, a railroad company is authorized to contract with another for the use of its road.

It is the policy of the State of New York to promote, and to some extent even to compel, agreements for some joint operation of their railroads between companies whose roads have connected or united; such agreements must necessarily impose to some extent restrictions on the broad powers and discretion, as to the construction and operation of a road, conferred by statute upon a railroad company.

Such agreements are valid unless the effect of the restrictions prescribed is injurious to the public. Even if the effect of such contract between two railroad companies is to cause the abandonment of a portion of the road of one company, that does not render the agreement illegal or against public policy if no detriment to the public results therefrom.

APPEAL by the defendants, The Brooklyn, Bath and West End Railroad Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 22d day of May, 1894, upon the decision of the court, rendered after a trial at the Kings County Special Term, enjoining and restraining the defendants from making certain changes in the operation and construction of their railroad lines.

*Morris & Whitehouse,* for the appellants.

*George W. Wingate,* for the respondent.

DYKMAN, J.:

We are entirely satisfied with the disposition made of this case at the Special Term, and with the reasons therefor contained in the opinion delivered at the Special Term.

The case depends upon a peculiar state of facts, and there seems to be no necessity for making any addition to the opinion of the trial judge, and the judgment should be affirmed upon that opinion, with costs.

BROWN, P. J., and PRATT, J., concurred.

Judgment affirmed, with costs on opinion of the Special Term.

The opinion of the Special Term was as follows :
CULLEN, J. :

This action is brought to restrain the operation of the railroad of the first-named defendant in alleged violation of a contract between the plaintiff and that company establishing a union terminal depot at Thirty-ninth street and Fifth avenue, Brooklyn.

The first question presented is the authority of the defendant, the Brooklyn, Bath and West End Railroad Company, to limit its franchise or statutory powers by contract. It is, doubtless, true, as a general proposition, that a *quasi* public corporation cannot, by contract, relieve itself from its duties to the public or its obligation to operate its franchise and to use its power for the public benefit. But this general proposition is subject to qualification. Under the act of 1839 (Chap. 218) a railroad company is authorized to contract with another for the use of its road. This has been held even to

518 P. P. & C. I. R. R. CO. *v.* B., B. & W. E. R. R. CO. No 1.

SECOND DEPARTMENT, FEBRUARY TERM, 1895. [Vol. 84.

authorize a lease. (*Beveridge* v. *N. Y. E. R. Co.*, 112 N. Y. 1; *Woodruff* v. *Erie R. R. Co.*, 93 id. 616.)

The General Railroad Act also provides for compulsory interchange of facilities of connection between crossing or uniting railways. Thus, it has always been the policy of this State to promote, and to some extent even to compel, agreements for some joint operation of their roads between companies whose roads have connected or united; such agreements must necessarily infer, to some extent, restrictions on the broad powers and discretion as to the construction and operation of its road conferred by statute upon a railroad company. But such agreements are valid unless the effect of the restrictions prescribed is injurious to the public. Even if the effect of the contract between the plaintiff and the defendant was to cause the abandonment of the part of the latter's road on Fifth avenue, between Twenty-sixth and Thirty-sixth streets, that does not render the agreement illegal or against public policy if there be no detriment to the public. (*People* v. *Rome & Watertown R. R. Co.*, 103 N. Y. 95.)

Here the plan of a terminal depot greatly subserved public convenience. The elevated railroad on Fifth avenue was to be continued along that avenue to the new depot into which trains of both surface railroad companies were to be brought. The Brooklyn, Bath and West End Company also leased the Fifth avenue piece of its road to the Atlantic Avenue Railroad Company, making a continuous street railroad to the new depot.

Thus, far greater facilities were given the public than it could have obtained from the few blocks of the steam railroad abandoned. The contract between the parties is, therefore, valid, and the plaintiff, having made a very large outlay in pursuance of it, is entitled to have it enforced.

It is, therefore, only to be determined what limitations that contract placed on the defendant, the Brooklyn, Bath and West End Railroad Company, and the other defendant, which has now leased the road of the first-named company.

Justice BARTLETT decided on the application for a temporary injunction that the contract did not prohibit the operation of the first-named defendant's road by electricity instead of steam, it being shown that it could be so operated without interfering with the

running of plaintiff's trains into the station. *Second*, that the said defendant had no right to use the ground reserved for the use of the Union Depot for the passage of trains intended to run through to other parts of the city. In this decision I entirely concur. By the agreement the two companies were " to erect, establish and maintain at said terminus of said elevated road at Fifth avenue and Thirty-sixth street, a joint railway depot and terminus " at the equal expense of both companies. The parties were to divide equally the receipts at this depot and to share equally the expense of its maintenance. While the agreement does not, in express terms, prohibit either company continuing its road at this point beyond the depot, I think it does so by necessary implication. If either road were to be continued beyond this point then the station or depot would plainly cease to be the terminus of the road. It would also entirely destroy the scheme for the division of the receipts and expenses of the depots provided by the agreement. A company extending its road further into the city would receive a great mass of its passengers and the great bulk of its receipts at the new terminus, and cast consequently the whole burden of the old station upon the other company. A personal examination of the ground and the structure erected shows that it was never contemplated (except on one contingency) to extend the two roads beyond this station. The provision in the contract inhibiting the plaintiff from extending its road or branches to the west, or the defendants extending its road or branches to the east, did not contemplate any extensions at this end of the route, but extensions through territory lying between the depot and Coney Island.

The 13th clause of the agreement provides for running trains through the cuts to the ferry, in the event of the parties effecting a satisfactory connection or arrangement with the South Brooklyn Railroad and Terminal Company, in which case the through business of both companies to and from Coney Island was to be divided as was provided in the contract for the other business. If such connection was made, it was plainly to be shared in by both parties. There has been no proof upon the trial as to the circumstances under which this connection was made. While the agreement calls for a satisfactory arrangement, I think it does not follow that either company could refuse to agree to a reasonable arrangement and then

prohibit the other from making the connection. So, also, neither party could make, unless upon the refusal of the other to enter into it, an agreement for connection for its exclusive benefit. But there is no evidence before me to show whether the Brooklyn, Bath and West End Company conferred with plaintiff about the connection, whether the arrangement is reasonable, whether the plaintiff declined to enter into, or whether the Brooklyn, Bath and West End Company refused to allow plaintiff to participate in it. I should not decide this question except on evidence of the actual transaction between the parties. This subject must, therefore, be withdrawn and left for another action, or the case must be reopened for evidence on this point.

The defendants should, therefore, be enjoined from operating their cars or trains beyond the Union Depot, "save through the cut," and while they may operate their road by electricity, and either by trains or by single cars, they may not so operate it as to interfere with the safe and ordinary running of plaintiff's trains by locomotives; the plaintiff to recover costs.