JOSEPH A. STROBE, Appellant, v. NETHERLAND Co., INC., Respondent.

Fourth Department, November 7, 1935.

*John F. Wright,* for the appellant.

*Oscar J. Brown* [*W. B. Mangin* and *Joseph M. Meatyard,* with him on the brief, of counsel], for the respondent.

EDGCOMB, J. This is an action for a declaratory judgment. The defendant is engaged in the sale and delivery of milk and cream in the city of Syracuse and vicinity, and the plaintiff is one of its drivers and peddlers. On February 27, 1926, the parties to this action entered into an agreement defining and fixing their duties and obligations one to the other. On July 5, 1933, the Milk Wagon Drivers, Chauffeurs and Dairy Employees Local Union No. 316, on behalf of its members, of which plaintiff was one, entered into a contract with the defendant, which modified in certain respects the terms of the original pact between the employer and its employee. On July 23, 1934, a second instrument was executed by the union and the Netherland Company which still further changed the provisions of the 1926 agreement.

Although the plaintiff has been working under the agreement of 1926 since it was made, except as it has been modified by the two union agreements, he now takes the position that the original agreement is no longer, if in fact it ever was, a binding contract between

the parties. The defendant takes the opposite view, and asserts with equal assurance that it is a valid, living, binding instrument, and, except as modified by the two union contracts, fixes and determines the rights of the parties thereto.

We have presented, therefore, a case where there is a *bona fide* existing dispute between the parties as to their jural relations and obligations under an agreement which they voluntarily entered into. True, the contract has not yet been breached, and no action has been commenced to enforce the rights of either party thereto, nor is one immediately threatened. A condition of affairs, however, is disclosed by the pleadings which indicates the existence of a cloud upon the rights of the contracting parties. In such a case the law will not withhold its aid because the parties have a complete and immediate remedy in other existing forms of action, when and if the contract is breached, or a wrong is actually perpetrated. It was to take care of just such a situation as we have before us that the Legislature added section 473 to the Civil Practice Act, and gave to the Supreme Court power to declare the rights and other legal relations of parties on request for such pronouncement, whether or not further relief was or could be claimed, and gave to such declaration the force of a final judgment. A controversy which places the jural rights of individuals in doubt disturbs the social equilibrium just as much as an overt infringement of such rights. The remedy furnished by the declaratory judgment was devised to do away with the menace which comes from a mere dispute or challenge of one's rights without any physical attack.

Speaking of the purpose of the act, this court has said, speaking through Mr. Justice CROSBY in *Post* v. *Metropolitan Casualty Ins. Co.* (227 App. Div. 156; affd., 254 N. Y. 541): " It was designed to supply the need for a form of action that would set controversies at rest before they led to the repudiation of obligations, the invasion of rights and the commission of wrongs."

A large part of the dispute between the plaintiff and defendant can well be settled by a declaratory judgment, for, as was pointed out by Judge CROSBY in the *Post Case* (*supra*), it is far better, where possible, to settle the contentions of the respective parties to a written instrument in advance of trying a prospective lawsuit, which may never be brought.

In his prayer for relief the plaintiff specifies, as he is required to do by rule 211 of the Rules of Civil Practice, the precise rights of which he seeks a declaration. He asks that the contract of February 27, 1926, between himself and defendant be declared void for want of consideration; that said agreement be held unenforcible in equity, because it is against public policy and is harsh and uncon-

scionable; that it be held that the rights of the parties rest solely upon the contract of July 23, 1934, between the union and the defendant; that the defendant be restrained and enjoined from enforcing the agreement of February 27, 1926.

The defendant demands that the complaint be dismissed, and further that the original contract between the parties be avowed a valid, binding agreement.

While the trial court has made findings adverse to all of plaintiff's contentions, as above outlined, the judgment appealed from simply dismisses the complaint, with costs, and fails to declare what the jural rights of the parties actually are. The very purpose of the action has thus been lost. Both parties have asked for a judicial pronouncement as to the legality of the 1926 contract. The court had the power, and under the circumstances was, in my opinion, charged with the duty of making such declaration, notwithstanding the fact that it has been found that plaintiff's contention in relation thereto was incorrect.

While we are in full accord with certain of the findings of the trial court, we cannot give our approval to the one which determines that there was a good and valuable consideration for the original agreement between the plaintiff and defendant.

The consideration recited in the instrument is one dollar, but such recital does not preclude the parties from disputing the fact, nor does it give the promise any validity. (*Presbyterian Church of Albany* v. *Cooper*, 112 N. Y. 517.) The evidence shows, and the court has found, that no money whatever passed between the parties. We must, therefore, look elsewhere for the cause which induced this agreement.

It is not essential to the validity of a promise in writing that the consideration should be expressed in the instrument; it may be proven by parol. (*Thompson* v. *Blanchard*, 3 N. Y. 335.)

It is elementary that mutual promises on the part of both parties to a contract, where each undertakes some act or forbearance which will be, or apparently may be, deterimental to the promisor, or beneficial to the promisee, constitutes a sufficient consideration for the agreement.

This necessitates an examination of the original instrument to see if it may be brought within the above rule. Briefly stated, it provides that the plaintiff may deliver milk and cream on a specified route; that he shall pay cash daily for all products sold by him at specified rates; that he shall pay the dairy company a specified rate per day for the use of its horse and wagon, and that he shall give such property proper care; that he will make deposits for the use of the company's bottles, and adhere to the rules of the com-

pany for charges for bottle usage; that he will in no way solicit or serve any of defendant's customers for a period of twelve months after the termination of the contract, or engage in a similar business in Onondaga county for a like time; that he will make the specified deposit as security for the faithful performance of the contract. On the part of the company it is provided that it will assume and collect from plaintiff's customers any good accounts for a fee to be fixed by the company; that it will take care of telephone orders, and special orders to deliver milk or cream on plaintiff's route, made necessary because of plaintiff's failure to deliver the same, reserving, however, the right to make a reasonable charge for such service.

It is urged, and not without some apparent reason, that this arrangement is a one-sided affair; that the promises are all on the part of the plaintiff. It will be noted that defendant does not specifically covenant to sell the plaintiff any milk or cream whatsoever. It is not necessary to the proper decision of this appeal to determine whether the court will read into the agreement an implied covenant on the part of the company to furnish the plaintiff with milk and cream for the purpose of carrying out his part of the bargain. (See *Baker Transfer Co.* v. *Merchants' Mfg. Co.*, 1 App. Div. 507; *Stilwell* v. *Ocean Steamship Co.*, 5 id. 212; *Fuller & Co.* v. *Schrenk*, 58 id. 222; affd., 171 N. Y. 671; *City of New York* v. *Delli Paoli*, 202 id. 18.) There are at least two distinct obligations which the defendant has assumed in this instrument. While they may be of minor importance in comparison with all that the plaintiff has bound himself to do, they would be sufficient to furnish a legal motive for the pact were it not for a clause in the instrument to which I shall call attention in a moment. The benefits to or the liabilities of the parties need not be equal in point of value. The law does not weigh the *quantum* of consideration. It permits the parties to be the judge of the actual worth of the benefits to be derived from their bargain.

While the 1926 contract provides that its term shall be twelve months from its date, and that it shall be considered renewed if not terminated by the parties, it is expressly stipulated that it may be ended at any time by the defendant, and that the salesman may also bring it to completion by giving a three weeks' written notice. We, therefore, have an instrument where the plaintiff is bound by various stipulations for a definite period of time, but where the defendant can be entirely freed from all obligations thereunder at any moment it elects to terminate the agreement. Mutuality is lacking when only one of the contracting parties is bound to perform.

"A promise is a good consideration for a promise. But no promise constitutes such a consideration which is not obligatory upon the party promising." (*Cold Blast Transportation Co.* v. *Kansas City Bolt & Nut Co.*, 114 Fed. 77.)

" Either all is a *nudum pactum*, or else the one promise is as good as the other." (*Harrison* v. *Cage*, 5 Mod. 411.)

The promises of neither party are binding unless those of both are obligatory.

This contract has been in force, and the parties have been acting under it since February 27, 1926. So far as it has been executed, it is founded upon a good consideration and is a valid agreement, but in the future, when it is executory only, when it conveys only a chose in action, it is a unilateral agreement, and a mere *nudum pactum*. There is no legal or binding obligation upon the defendant, because it can terminate its promise at any moment it sees fit so to do. It is analogous to an option, without consideration, which cannot be enforced. Defendant's bargain was to do the things specified in the document, and those which are read into it by implication, only so long as it pleased it so to do, and when the spirit moved it could put an end to the agreement by its mere *ipse dixit*. This is an insufficient consideration for a binding contract. (1 Williston Cont. § 104, p. 219; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Winton*, 7 Tex. Civ. App. 57; 26 S. W. 770; *Missouri, Kansas & Texas Ry. Co.* v. *Smith*, 98 Tex. 47; 81 S. W. 22; *Cohn* v. *Levine*, 185 App. Div. 529; *Rafolovitz* v. *American Tobacco Co.*, 73 Hun, 87; *Joseph* v. *Sulzberger*, 136 App. Div. 499; *Chicago & Great Eastern R. Co.* v. *Dane*, 43 N. Y. 240; *Gross* v. *Stampler*, 165 N. Y. Supp. 214; *Smyth* v. *Greacen*, 100 App. Div. 275.)

*McCall Co.* v. *Wright* (198 N. Y. 143), cited by respondent, is not controlling here. There the employer reserved the right to terminate the contract of employment upon thirty days' notice. It was binding for thirty days at least. Here the mere whim or fancy of the defendant may move it to terminate the agreement without previous warning.

We agree with the trial court that the rights of the parties are not to be determined solely by the union contract of July 23, 1934, but by all three agreements. They are to be read together, and, except as modified by the later agreements, the 1926 contract has not been supplanted or superseded. (*Gulla* v. *Barton*, 164 App. Div. 293.)

The clause which prohibits the plaintiff from serving any of defendant's customers for a year from the termination of the contract, or from engaging in a similar business in Onondaga county for a like time, seems to be the main object of attack by the plaintiff

and the particular provision from which he seeks to be relieved. This provision cannot be said to be against public policy, or so unreasonable and unconscionable as to shock the sense of justice of a court of equity, or to cause it to refuse its aid in enforcing its obedience. Especially is that so in view of the fact that the plaintiff has for years been the recipient of benefits under the contract. Similar agreements have frequently been enforced by a court of equity. (*McCall Co.* v. *Wright,* 198 N. Y. 143; *Witkop & Holmes Co.* v. *Boyce,* 61 Misc. 126; affd., 131 App. Div. 922; *National Wall Paper Co.* v. *Hobbs,* 90 Hun, 288; *Bonta* v. *Gridley,* 77 App. Div. 33.)

It is a well-settled rule of equity, however, that an agreement will not be enforced unless it is founded upon a valuable consideration, and is mutual in its obligation and in its remedy. (*Palmer* v. *Gould,* 144 N. Y. 671, 674; *Cook* v. *Casler,* 87 App. Div. 8, 10; *Phillips* v. *Berger,* 8 Barb. 527; *Woodward* v. *Harris,* 2 id. 439, 442.)

Whether an action in equity can be maintained by either party to enforce the provisions of this restrictive covenant in the 1926 contract cannot be satisfactorily determined at this time. As before noted, the parties have acted under this agreement since its execution. The contract is valid for all that has been done under it. The parties may have acquired certain rights of which we are not informed, and which must be respected. We cannot fairly determine upon this record just how far this particular provision can be enforced in the future, until an occasion for such determination arises, if that time ever comes, and until the rights and equities of the parties are made known. The granting or withholding of a declaratory judgment rests in the sound judicial discretion of the court. (Rules Civ. Prac. rule 212; *Union Trust Co.* v. *Main & South Streets Holding Corp.,* 245 App. Div. 369; *Kittinger* v. *Churchill Evangelistic Assn., Inc.,* 239 id. 253, 257; *James* v. *Alderton Dock Yards,* 256 N. Y. 298.) The exercise of such discretion is subject to appellate review in this court. The Appellate Division is just as much a part of the Supreme Court as the Trial Term.

While, as before noted, the remedy of a declaratory judgment is especially appropriate where the construction of a written instrument is involved, I think that under the circumstances we may well refuse to exercise our discretion in so far as we are asked to decide at this time that plaintiff is not entitled to enforce what is left of the 1926 agreement. To that extent I think that the parties should be left to other existing forms of action which would be available, in the event that either party should breach the agreement.

Neither do I think that it is necessary or proper to sift the complicated facts and determine in detail in what particulars the 1926 contract is modified by the two succeeding agreements, or the

particular rights of the parties under the three pacts. Such a declaration is often declined.

I favor the granting of a judgment which shall judicially determine that the three agreements mentioned in the complaint must be read together in fixing the jural rights of the parties, and that the original pact, as modified and altered by the subsequent contracts, is a valid and binding agreement, in so far as it has been executed, but in so far as it is executory it is void for want of consideration. I think that we should decline to pass upon the power of the defendant to enforce the restrictive covenant in the 1926 contract, and leave that matter to be passed upon in some other action which may be brought if the necessity therefor ever arises. This requires the disapproval and reversal of certain findings, and the making of new ones.

The judgment should be reversed, and the jural rights of the parties declared as indicated in this opinion.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment reversed on the law, with costs, and judgment ordered declaring the jural rights of the parties as indicated in the opinion. Certain findings of fact and conclusions of law disapproved and reversed as matter of law and new findings and conclusions made.