■ PHILIP H. ACKERT et al., Individually and in Behalf of All Other Stockholders of Spokane International Railroad Company, Similarly Situated, Respondents, v. UNION PACIFIC RAILROAD COMPANY et al., Appellants. PHILIP H. ACKERT et al., Individually and in Behalf of All Other Stockholders of Spokane International Railroad Company, Similarly Situated, Respondents, v. UNION PACIFIC RAILROAD COMPANY, Appellant, et al., Defendant.

Appeal by both defendants from an order of the Supreme Court at Special Term, entered April 10, 1957, in Erie County, which granted a motion by plaintiff for an order granting an injunction *pendente lite*, prescribing the undertaking to be filed and directing service of notice to stockholders of Spokane International Railroad Company.

Appeal by defendant Union Pacific Railroad Company from an order of said court entered April 10, 1957, which denied a motion by said defendant for an order granting judgment and other relief except that part which directed certain allegations be stricken from the first cause of action.

The order should be affirmed in the first above-entitled action, with $10 costs and disbursements, without prejudice to the right of the defendant to make an appropriate application for an increase in the undertaking upon a showing of a change in circumstances.

The order in the second above-entitled action, insofar as appealed from, should be affirmed, with $10 costs and disbursements.

VAUGHAN, J. (concurring in part and dissenting in part). This case grows out of a contemplated merger of the Spokane International Railroad Company, of which plaintiffs are stockholders, and defendant Union Pacific Railroad

Company. Defendant Guaranty Trust Company of New York was retained to act as depositary. Plaintiffs, suing individually and on behalf of all other Spokane stockholders similarly situated, commenced this action for declaratory and other relief, and they contend that certain contracts have expired by reason of the failure of the Interstate Commerce Commission to approve the proposed merger by January 1, 1957. Defendants maintain that the requisite approval was obtained, and if not, that the contracts were merely voidable at the option of the Union Pacific. Both defendants appeal from an order granting an injunction *pendente lite* against the transfer by Guaranty Trust to Union Pacific of any of the deposited Spokane stock. In addition, Union Pacific appeals from an order denying its motion to dismiss the complaint on the grounds that it does not state facts sufficient to constitute a cause of action and that plaintiffs have not legal capacity to sue on behalf of all other Spokane stockholders similarly situated.

It appears from the complaint that the individual plaintiffs are the owners of 55,569 shares of Spokane stock, being more than 20% of the 199,248 shares outstanding. Negotiations between plaintiffs and Union Pacific terminated in a "definitive agreement" dated January 1, 1956. That agreement contemplated a merger of the two carriers, to be accomplished by the exchange of one share of Union Pacific for one and one-tenth shares of Spokane. In order to have a tax-free exchange it was necessary that the former railroad acquire at least 80% control of the latter, and it was agreed that Union Pacific would thereafter extend to all Spokane stockholders an offer to exchange shares on the same terms. Such an offer was circulated on January 30, 1956, and the owners of more than 80% of the outstanding Spokane shares signified their acceptance by depositing their shares with the defendant Guaranty Trust. Both the definitive agreement and the offer to stockholders contemplated approval of the merger by the Interstate Commerce Commission not later than January 1, 1957. If such approval were not obtained by that date, then in the language of the definitive agreement, "Union Pacific may at its election terminate this Agreement and withdraw any offer made pursuant hereto," or as the offer to stockholders expressed it, "the Offer and the agreements relating thereto referred to above will thereupon be void and of no effect and the stock deposited hereunder will be returned to those who tendered same."

On December 26, 1956, Division 4 of the Interstate Commerce Commission, having jurisdiction of applications by a railroad for authority to issue its shares or to acquire control of another carrier, granted an order approving the merger and authorizing the issuance of the Union Pacific stock. The order was dated December 20 and by its terms was to "become effective 40 days from its date."

Plaintiffs contend that the "approval" contemplated by the offer of January 30, 1956, was an effective approval which would authorize, not prospectively but immediately, the issuance of Union Pacific stock and the tax-free exchange. They claim that the contract was not satisfied by an order of approval granted before but effective after January 1, 1957. And they follow that up with the fact that certain intervening carriers have petitioned for a reconsideration of the Division 4 order by the entire Interstate Commerce Commission, with the result that said order has been stayed pending disposition of the matter by the full commission (U. S. Code, tit. 49, § 17, subd. [8]). It is, therefore, uncertain whether final approval of the I. C. C. will ever be obtained, and if so, when it will be granted. Plaintiffs urge that such a state of facts does not satisfy a contractual requirement designed to expedite completion of the merger before events in the market discounted the terms agreed

upon. Therefore, the plaintiffs contend, the offer of January 30, 1956, the only document ever circulated among all of the Spokane stockholders, has by its own terms become "void and of no effect". Plaintiffs allege that they demanded the return of their certificates from Guaranty Trust, but that defendants refused their demands.

The complaint demands judgment declaring that the contract between plaintiffs (and others similarly situated) and Union Pacific has terminated and become void and that plaintiffs (and others similarly situated) are entitled to the immediate return of their certificates, directing defendants to return the same, and for other and further relief.

The first question which must be considered is Union Pacific's motion to dismiss the complaint for failure to state facts sufficient to constitute a cause of action (Rules Civ. Prac., rule 106, subd. 4). The entire court agrees that the motion was correctly denied. Since the action is for a declaratory judgment, the rule of the *Rockland Light & Power Co.* v. *City of New York,* applies (289 N. Y. 45, 51): "a complaint praying for judgment declaring the 'rights and legal relations' of the parties should not be dismissed as insufficient merely because the facts alleged in the complaint show that the plaintiff is not entitled to a declaration of rights *as the plaintiff claims them to be.* The court should, in proper case, retain jurisdiction of the action and should exercise its power to declare the rights and legal relations of the parties whatever they may be." This court has applied that rule on numerous occasions (*Strobe* v. *Netherland Co.,* 245 App. Div. 573, 575; *Manufacturers & Traders Trust Co.* v. *Bell,* 270 App. Div. 796; *Liebschutz* v. *Schaffer Stores Co.,* 276 App. Div. 1, 5; *Derby* v. *Gayvert & Co.,* 286 App. Div. 1150.) In the *Derby* case we stated: "Annexed to the complaint are numerous documents, the construction and effect of which are sharply in issue. The case presents a genuine dispute, based upon conflicting interpretations of those documents, and rendering uncertain the jural rights and relations of the parties. Declaratory relief in some form is therefore appropriate (*Strobe* v. *Netherland Co.,* 245 App. Div. 573). It may be that, on the merits, plaintiffs are not entitled to the particular declarations which they have demanded, or even that the judgment should declare the parties' rights and relations according to defendants' theory of the case. But in either event the complaint would state a cause of action for a declaratory judgment [citing cases]."

The present case is clearly appropriate for declaratory relief. A bona fide dispute, founded upon conflicting interpretations of the documents, renders uncertain the parties' rights and legal relations, so that they cannot really know whether the merger is still contractually required and must act at the peril of serious liability. We need not now decide whether "approval" as employed in the contract signifies approval by Division 4 or by the entire commission, whether an actually effective approval or one merely on paper, and whether the case is changed by the petition for reconsideration *de novo* by the I. C. C. Neither must we decide whether the effect of nonapproval by January 1, 1957, would be to render the entire agreement null and void, as the offer of January 30, 1956, might suggest, or merely to permit Union Pacific at its option to withdraw, as the definitive agreement of January 1, 1956, arguably indicates. The ambiguity or possible inconsistency between the two documents need not now be resolved. Upon a trial, if interpretation will not work an adjustment between the two, it may be decided whether to prefer the definitive agreement, which was the more complete statement of the terms of the merger and to which the offer was by its own terms subjected, or the offer of January 30, 1956, which was subsequent in time and was the only document

ever seen by all Spokane stockholders. It is enough for present purposes, as this court said in the *Strobe* case (245 App. Div. 573, 575) that "there is a *bona fide* existing dispute between the parties as to their jural relations and obligations under an agreement which they voluntarily entered into. True, the contract has not yet been breached, and no action has been commenced to enforce the rights of either party thereto, nor is one immediately threatened. A condition of affairs, however, is disclosed by the pleadings which indicates the existence of a cloud upon the rights of the contracting parties." The first cause of action, by the named plaintiffs individually, states facts sufficient to support a declaratory judgment and may not be dismissed under Rule 106.

The next question is whether the second or "representative" action can be maintained in view of the circumstances disclosed by this record, and for that purpose the parties' affidavits may be examined (rule 107, subd. 2). The majority are of the opinion that the so-called representative action is proper; from that conclusion I dissent. In granting the temporary injunction, the Special Term ordered plaintiffs to notify all depositing Spokane shareholders of the pendency and nature of the action. One of the plaintiffs submitted an affidavit to the effect that he had received authorizations from the owners of 45,598 Spokane shares "to include them as parties to this action", and further authorizations from persons whose precise holdings were unknown, so that plaintiffs claim ownership or representation of more than 106,000 shares, being a clear majority of the number outstanding. Union Pacific countered with the affidavits of owners of 85 Spokane shares to the effect that they would not join in the action and desired consummation of the exchange. The complaint alleges in the second cause of action that the depositing Spokane stockholders are "very numerous, consisting of more than 400 persons, and they reside in various states of the Union, and it is, therefore, impracticable to bring all of such owners in by name as parties."

Section 195 of the Civil Practice Act provides: "Where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." There is a helpful analysis of the interpretation which the courts have given to this statute in the eighteenth annual report of the Judicial Council (Eighteenth Annual Report of N. Y. Judicial Council, 1954, pp. 217-249). As the author points out (p. 228), while the second branch of the statute seems to suggest that class actions are authorized when there are persons so numerous that they cannot practicably be joined as parties, regardless of any community of interest, actually the courts have "never permitted a class action unless there also existed a unity of interest of one kind or another. One of the leading cases [*McKenzie* v. *L'Amoreaux*, 11 Barb. 516, 518] decided a few years after the adoption of the class action provision suggested that proper construction required the interpolation of the words 'though united in interest' in the second clause. Such construction would seem to be imperative if the absent parties are to be bound by the judgment rendered in the action; for some unity of interest is the sole guaranty for the protection of the rights of absent persons." Thus it was said in *Bouton* v. *Van Buren* (229 N. Y. 17, 22): "A representative action cannot be maintained unless it appears from proper allegations in the complaint that the plaintiff not only has a cause of action, but that he is representative of a common or general interest of others. Unless both facts appear, a demurrer is well taken." (See *Brenner* v. *Title Guar. & Trust Co.*, 276 N. Y. 230, 236; *Society Milion Athena* v. *National Bank of Greece*, 281 N. Y. 282, 292-293; *Kovarsky* v. *Brooklyn Union Gas Co.*, 279 N. Y. 304, 314.)

The last three cited cases are the leading decisions of the Court of Appeals. The *Brenner* and *Society Milion* cases involved charges of fraud perpetrated upon numerous persons in separate transactions and giving rise to a choice of remedies. It was held in both cases, as stated in the *Society Milion* case (p. 292): "Separate wrongs to separate persons, though committed by similar means and even pursuant to a single plan, do not alone create a common or general interest in those who are wronged." The class action was sustained in the *Kovarsky* case (p. 315), in which one consumer of gas was permitted to represent all in an action for a declaratory judgment and injunction against the exaction of an illegal service charge. "All consumers are interested in a declaration of the law. All consumers, as is this plaintiff, are liable in the future to be subjected to the charge in question."

I think there is a vital distinction between the present case and cases in which class actions have been held proper. In those cases the self-chosen contender for the common cause has sought to assert a claim or vindicate a right for which no price need be paid in return. Thus, one property owner may sue on behalf of others to abate a nuisance offensive to all in the enjoyment of their property; one lower riparian owner may represent others in seeking to enjoin a diversion injurious to the water rights of all; one union member may sue to require the return of funds belonging to the union, or to assert a claim under the minimum wage law, for the benefit of others similarly situated; a stockholder may represent others in seeking to compel the declaration of a dividend; and one judgment creditor may sue on behalf of all to set aside a fraudulent transfer of property by the judgment debtor. In such cases a common right or interest is asserted on behalf of all members of the class, and the latter need surrender nothing in return. But in the present case the Spokane shares will be regained only at the price of a judicial declaration that a contract, considered valuable by the Spokane stockholders at the time they entered into it, has expired and confers upon them no more rights. In my opinion, each Spokane stockholder must decide for himself whether destruction of the contract is too high a price to pay for return of his shares. Plaintiffs for their part believe that the return of their shares is more important than preservation of the contract, but there is nothing to show that that attitude is generally characteristic of the class. It must be remembered that plaintiffs' stock is uniquely and peculiarly valuable to them for two reasons. First, because it represents working control of the corporation, and the complaint so alleges. Second, because it exceeds 20% of the outstanding stock and therefore is essential to any tax free exchange; it represents bargaining power which may be exercised in behalf of plaintiffs' individual interests. That such bargaining power is not theoretical appears from the condition insisted upon by them as the price of an extension of the time within which to obtain approval of the Interstate Commerce Commission, viz., the employment of one of the plaintiffs by Union Pacific for five years at an annual salary of $50,000.

The position of a small holder of Spokane stock is quite different. If plaintiffs are successful, he will receive back stock which he intended to exchange and for which there is a very limited market. Spokane stock is unlisted and is traded infrequently over the counter. If the contract is held to have expired, the Spokane stockholders will have lost, perhaps for all time, the opportunity to effect a tax free exchange of their holdings for the easily marketed shares of one of the nation's largest and most successful carriers. They may reasonably believe that such an opportunity should be preserved, and the exchange consummated upon terms which were favorable to Spokane stockholders when agreed upon, in spite of subsequent fluctuations in the market which as every-

one knows may be temporary. That a substantial number of Spokane stockholders are or may be of that view is clear. When it seemed that approval of the Interstate Commerce Commission could not be obtained by January 1, 1957, the Union Pacific solicited the continued deposit of the Spokane shares until April 30, 1957. The plaintiffs' group immediately wrote to the Spokane stockholders and expressed disapproval of the proposed extension. Nevertheless, the owners of 13,796 Spokane shares consented to the same, thereby evidencing their interest in performing a contract which plaintiffs on their behalf seek to destroy.

The key to this aspect of the case, in my opinion, is the status of the plaintiffs as controlling although minority stockholders. They themselves have recognized their special position, for as stated in the affidavit of one plaintiff who is counsel for them all: "The shares owned by plaintiffs and deposited as aforesaid have a unique and special value related as they are to control of the Company and are not susceptible to appraisal through market price or otherwise." Plaintiffs are willing to relinquish their rights under the contract to regain the peculiarly valuable controlling interest, but the same price might be too high to pay for a small block of Spokane shares which are unrelated to control, not indispensable to the consummation of a tax free merger, and for which there is an inactive and restricted market. In short, plaintiffs are not necessarily of the same class with those whom they seek to represent. "Because of the dual and potentially conflicting interests of those who are putative parties to the agreement in compelling or resisting its performance, it is impossible to say, solely because they are parties to it, that any two of them are of the same class." (*Hansberry* v. *Lee*, 311 U. S. 32, 44). It is interesting to note that the Temporary Commission on the Courts, in recommending a new rule governing class actions in New York, proposes that such actions may be maintained only where there are "one or more [persons] whose claims or defenses are representative of the claims or defenses of all and who will fairly and adequately protect the interests of all" (First Preliminary Report of the Advisory Committee on Practice and Procedure, rule 23.5, p. 34). The requirement of fair representation is fundamental to any concept of the class action and is not satisfied by the facts of record in this case. The second cause of action should be dismissed.

If I am correct in that respect, then the motion of defendant Union Pacific pursuant to rule 103, to strike certain allegations from the complaint, should be granted to the extent of striking out the last sentence of paragraph 12, which alleges that Spokane stockholders other than the named plaintiffs have demanded the return of their certificates. For purposes of plaintiffs' case, it is enough that they have demanded the return of their shares, and what others may have done can have no relevancy to the case.

On the showing which was made, the Special Term properly granted an injunction *pendente lite* restraining the transfer to Union Pacific by Guaranty Trust of the deposited Spokane stock (Civ. Prac. Act, § 878). Plaintiffs have obtained, not a predetermination of the issues, but the preservation of the *status quo* until the Supreme Court can determine who is entitled to possession of the Spokane certificates. However, in view of my conclusion that no representative action is pleaded, the injunction should be limited to the stock of the named plaintiffs. If they cannot represent others on the trial, they should not do so before trial.

Defendants also attack as inadequate the amount of the undertaking ($2,500) prescribed as a condition of the injunction. It is unnecessary to consider that question at this time, but the injunction order should be modified to provide

that it shall be without prejudice to defendants' right to make a proper application for an increase in the undertaking, when and if the Interstate Commerce Commission should approve the proposed merger. Until that time, no legal damage will be sustained, for without such approval the Union Pacific cannot lawfully issue its stock and acquire control of the Spokane stock, regardless of the injunction.

The orders appealed from should be modified in accordance with this opinion.

All concur, except Vaughan, J., who dissents in part and votes for modification in an opinion. Present — McCurn, P. J., Vaughan, Williams, Bastow and Goldman, JJ.

Order affirmed, with $10 costs and disbursements, without prejudice to the right of the defendant to make an appropriate application for an increase in the undertaking upon a showing of a change in circumstances.— Order insofar as appealed from affirmed, with $10 costs and disbursements.