FLEMINGTON NATIONAL BANK & TRUST COMPANY (N. A.), Respondent, v DOMLER LEASING CORPORATION, Appellant, et al., Defendants.

First Department, November 14, 1978

## APPEARANCES OF COUNSEL

*Arthur Karger* of counsel *(David Abramowitz,* attorney), for appellant.

*Milton Shermet* of counsel *(Richard S. Feldman* with him on the brief; *Winick & Shermet, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

LUPIANO, J.

Defendant Domler Leasing Corporation, by written lease dated October 18, 1972 (eff Nov. 14, 1972), leased four knitting machines for a term of four years to Roselle Knitting Mills, Inc. and Twintex Incorporated as colessees. Domler had purchased the machines from Chrysler Machinery, Ltd. for $100,-000. The lease required the colessees to make 47 monthly rental payments of $2,800.35 each, aggregating $131,616.45. On December 19, 1972, in consideration of the sum of $97,199.65 paid to it, Domler assigned to Yegen Leasing Corporation the afore-mentioned lease. This assignment did not contain any guarantee by Domler or any provision for recourse by Yegen against Domler in the event of default by the colessees under the lease. However, Domler did execute a security agreement which granted to Yegen a security interest in the four knitting machines. One day later, to wit, December 20, 1972, Yegen assigned all of its right, title and interest in the lease to plaintiff Flemington National Bank & Trust Company (N. A.).

On February 28, 1973, Yegen and Domler entered into two agreements. One agreement (hereinafter referred to as the "Repurchase Agreement") provided in pertinent part, as follows: Domler proposes to offer to Yegen "from time to time for purchase, certain leases or security agreements * * * [Yegen] may purchase such agreements offered to [it] hereunder, as [Yegen] shall determine in [its] sole discretion * * * In order

to induce [Yegen] to purchase such agreements and to establish the terms and conditions upon which such purchases shall be made, [Domler] hereby covenant[s] and agree[s] as follows * * * 4. Repurchase. We agree to repurchase *from you* * * * any agreement which is delinquent for a period of 15 consecutive days for the unpaid balance thereunder; provided, however, that we shall have 30 days after notice of such delinquency in which to cure same * * * 6. Assignment. We acknowledge notice that *you may further assign* the *agreements which you acquire hereunder* and agree that this agreement and all covenants, warranties and undertakings herein shall inure to the benefit of your successors and assigns as well as of yourselves * * * 9. Retrospective Effect. This Agreement will apply not only prospectively but also to any Agreements heretofore acquired by you from us" (emphasis supplied).

The other agreement, entitled "Continuing Floor Plan Security Agreement" in pertinent part stated: "1. By this Agreement, [Domler] grants to [Yegen] a continuing security interest in the specified Collateral described in all leases of Collateral from time to time *acquired hereafter* by [Yegen] from [Domler]" (emphasis supplied). In its opening paragraph this agreement recited that it was intended to provide Yegen "with a security interest" in the leased equipment "as security for [Domler's] separate guarantee of payment of each lease of Collateral *hereafter* acquired by [Yegen]." (Emphasis supplied.)

■ It is well recognized that agreements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one *(Nau v Vulcan Rail & Constr. Co.,* 286 NY 188, 197).

■ In April, 1974, the colessees defaulted on the lease, leaving a balance due and unpaid of $89,611.20 and plaintiff Flemington brought this action to recover judgment for the balance. The sole issue raised on appeal is whether defendant Domler is liable to plaintiff Flemington for this balance, plaintiff relying on paragraphs 4 and 9 of the February 28, 1973 Repurchase Agreement between Yegen and Domler set forth above. For purposes of resolution of this issue, the validity of the Repurchase Agreement is assumed and defendant Domler's contention that said agreement is unenforceable because of lack of consideration is not passed upon. The

critical fact is that at the time Yegen and Domler entered into the February 28, 1973 agreements, Yegen had already parted with all of its right, title and interest in and to the Roselle-Twintex lease. Plaintiff is entitled to the benefit of the February 28, 1973 Repurchase Agreement only if it is a party to the agreement or a third-party beneficiary thereunder. Patently, plaintiff is not a party to the Repurchase Agreement. Regarding plaintiff's claimed status as a third-party beneficiary, "[i]t is old law that a third party may sue as a beneficiary on a contract *made for his benefit. (Lawrence v Fox,* 20 NY 268; 17A CJS, Contracts, § 519 [3]; 10 NY Jur, Contracts, § 237.) However, an intent to benefit the third party must be shown *(Beveridge v New York El. R.R. Co.,* 112 NY 1, 26; *Cerullo v Aetna Cas. & Sur. Co.,* 41 AD2d 1), and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts. *(Associated Flour Haulers & Warehousemen v Hoffman,* 282 NY 173, 180; *Moch Co. v Rensselaer Water Co.,* 247 NY 160; Simpson, Contracts, § 117.)" *(Port Chester Elec. ·Constr. Corp. v Atlas,* 40 NY2d 652, 655; emphasis supplied.)

■ ■ Study of the February 28, 1973 agreements between Domler and Yegen discloses an unambiguous and explicit intent on the part of Domler to protect Yegen, should Yegen choose to act in reliance upon Domler's representations by purchasing, *in futuro,* leases or security agreements offered to Yegen by Domler. This protection in part was to take the form of an obligation on Domler's part to repurchase from Yegen any lease or agreement purchased by Yegen which becomes delinquent. Explicitly recognizing that Yegen may wish to *further* assign the agreements which it might acquire in reliance on, the February 28, 1973 agreements or the agreements theretofore acquired by Yegen from Domler, the latter further agreed that such protection would inure to the benefit of Yegen's successor and assign as well. No such protection was mentioned with respect to successors and assigns of any agreement which Yegen had *theretofore assigned,* i.e., prior to the February 28, 1973 agreement taking effect. The protection to be afforded Yegen by Domler in undertaking to repurchase delinquent agreements was in the nature of a contract of guarantee. "The rule of *strictissimi juris* is applicable to contracts of guarantee and a guarantor should not be bound beyond the express terms of its agreement *(Wesselman v. Engel Co.,* 309 N.Y. 27)" *(Delaware Funds v Zuckerman-Hon-*

*ickman, Inc.,* 43 AD2d 889). Applying the rule of strict construction and utilizing common sense, it must be concluded that there is nothing in the February 28, 1973 agreements to indicate any intention to provide protection for a third-party assignee in a case such as this in which Yegen had previously parted with all of its right, title and interest in the lease in question. Accordingly, the plaintiff under the circumstances herein is not a third-party beneficiary entitled to enforce the February 28, 1973 agreements.

■ Plaintiff's contention that defendant Domler Leasing Corporation waived its right to assert a "defense" that plaintiff cannot enforce the February 28, 1973 agreements as a third-party beneficiary because defendant Domler failed to raise this as a defense in its answer, in prior proceedings or at trial, is without merit and misdirected. "A person seeking to enforce a contract as a third-party beneficiary has the burden of demonstrating that he has enforceable rights thereunder" (10 NY Jur, Contracts, § 237, p 159; see *Matter of Conay,* 29 Misc 2d 1090, adhered to on rearg 29 Misc 2d 1095, affd 284 App Div 950). Patently, it is plaintiff's initial burden to prove, not defendant's to disprove, that plaintiff can enforce the February 28, 1973 agreements as a third-party beneficiary thereunder. Giving every fair intendment to paragraphs 12, 13 and 14 of the complaint for purposes of sustaining plaintiff's statement of its cause of action as third-party beneficiary, the issue of whether plaintiff is entitled to enforce the agreements as third-party beneficiary is properly before this court on appeal from the judgment in plaintiff's favor after the nonjury trial.

Logic dictates that before the issue of enforceability of the February 28, 1973 agreements is reached, plaintiff must demonstrate that it is entitled to raise such issue, that is, that it is a third-party beneficiary under those agreements. If plaintiff is not such a beneficiary, it matters not whether the agreements are enforceable for purposes of resolution of this appeal.

■ Scrutiny of the record discloses that on summation at the close of trial, the parties addressed the issue of whether plaintiff is a third-party beneficiary under the February 28, 1973 agreements entitled to enforce same. The trial court, the litigants and this court are in accord that the February 28, 1973 agreements are not ambiguous. Accordingly, their construction is one of law for the court to determine.

"Within the principles of adjudged cases * * * where the plaintiff seeks to base his right to maintain his action against a third party upon a contract made between that party and another, it must be one made or intended for his benefit. Such a beneficial intent *must be clearly found* in the agreement. *(Wheat v. Rice,* 97 N.Y. 296; *Vrooman v. Turner,* 69 id. 280; *Barlow v. Myers,* 64 id. 43; *Lawrence v. Fox,* 20 id. 268.)" *(Beveridge v New York El. R. R. Co.,* 112 NY 1, 26; emphasis supplied.) To repeat, before a third party can enforce a contract purportedly in his favor, it must clearly appear that the contract was made and intended for his benefit (10 NY Jur, Contracts, § 239). A reading of the February 28, 1973 agreements demonstrates that they were made and intended for Yegen Leasing Corporation's benefit and that the agreements looked toward a situation *in futuro.* Simply put, defendant Domler was interested in engaging in further (i.e., future) business with Yegen and declared that if Yegen did engage in future business (at Yegen's sole discretion) by purchasing leases or security agreements from Domler, Domler would protect Yegen by repurchasing any such lease or security agreement purchased by Yegen which became delinquent. Domler even "sweetened the pot," by agreeing that if Yegen further (i.e., *in futuro)* assigned agreements acquired by it (Yegen] under the February 28 agreements, or further (i.e., *in futuro)* assigned agreements acquired by Yegen, prior to the February 28, 1973 agreements, Domler would extend such protection to Yegen's assignees. The effect and benefits of the February 28, 1973 agreements, beyond peradventure, related to future conduct, future actions to be taken by Yegen, at the latter's option, in reliance on these representations of Domler. Yegen, therefore, was clearly given to understand that if it did business with Domler on the basis of the February 28, 1973 agreements, it would be afforded protection against delinquent agreements which it purchased after February 28, 1973, and that as to any agreements which it purchased from Domler, whether before or after February 28, 1973, and which it (Yegen) determined to further assign, that is, to assign after February 28, 1973 (provided Yegen was doing further business with Domler after such date), such protection would be afforded its (Yegen's) assignees.

To construe the February 28, 1973 agreements as clearly demonstrating an intent by Domler to afford such protection to plaintiff, an assignee of a lease which Yegen had *acquired*

from Domler *prior to* the February 28, 1973 agreements *and* which was *assigned* by Yegen *prior to* the February 28, 1973 agreements is to reform the February 28, 1973 agreements under the guise of construction, which device, where the agreements are so clear in their intent, "adds insult to injury." It is noteworthy that paragraph 6 relating to "Assignment" in the "Repurchase Agreement" speaks in explicit terms of the possibility that Yegen Leasing Corporation "may further assign" and not in terms of prior or past assignments by Yegen.

██ ██ Finally, as stated above, the validity of the Repurchase Agreement is assumed. The record does not permit of nor do the circumstances presented demand a resolution of the issue of whether the Repurchase Agreement is valid. First, Yegen Leasing Corporation, which accepted the Repurchase Agreement and to whom Domler Leasing Corporation made its promise (embodied in the Repurchase Agreement), is not a party to this lawsuit. Second, nowhere in the record can it be found whether or not Yegen Leasing Corporation acted in reliance upon the February 28, 1973 agreements by purchasing agreements (leases or security agreements) offered to it by Domler Leasing Corporation after the February 28, 1973 agreements were entered into. It is well recognized that "(i)n reference to the sufficiency of an acceptance, there is a distinction between an offer to make a contract executory on both sides and an offer or promise for an act. In the latter case the only acceptance of the offer that is necessary is the performance of the act. In other words the promise becomes binding when the act is performed" (9 NY Jur, Contracts, § 33, p 561). As a general rule, there must be mutuality of obligation in order to form a contract *(Schlegel Mfg. Co. v Cooper's Glue Factory,* 231 NY 459; *Winslow v Mayo,* 123 App Div 758, affd 195 NY 551). However, this doctrine is not applicable to a unilateral contract *(Hedeman v Fairbanks, Morse & Co.,* 286 NY 240; *Rubin v Dairymen's League Co-op. Assn.,* 284 NY 32).

"The general rule is that a promise * * * made by one party with none by the other is void, for unless both are bound so that either can sue the other for a breach, neither is bound. If, however, there is a sufficient consideration mutual promises are not essential, for the consideration supports the promise although made by one party only. *(Justice v. Lang,* 42 N.Y. 493.) Even when the obligation of a unilateral promise is suspended for want of mutuality at its inception, still, upon

performance by the promisee a consideration arises 'which relates back to the making of the promise, and it becomes obligatory' *(Willetts v. Sun Mut. Ins. Co.,* 45 N.Y. 45, 47.)" *(Grossman v Schenker,* 206 NY 466, 468; see, also, *Bisbing v Sterling Precision,* 34 AD2d 427, 428.)

■ Unilateral contracts are distinguished from bilateral contracts as follows: "The agreement may consist of a promise for an act * * * or a promise for a promise. In the first, the promise is the offer and the act * * * is the acceptance. As soon as the act * * * takes place, the offer is accepted, and the contract is made, leaving only the promise outstanding. In other words, the party acting * * * has done all that is required of him at the moment the contract springs into existence and that leaves only the promise of the other party unfulfilled. Where one party has fully performed on his side at the time the contract arises, there is what is known as a unilateral (one-sided) contract because it leaves outstanding an obligation on the part of the other party only" (Whitney, Law of Contracts [6th ed], § 2).

In conclusion, it should be noted that at trial both the president of Domler Leasing Corporation and counsel for Yegen Leasing Corporation (called by plaintiff as a witness) who participated in the negotiations of acquisitions and their related documents and transactions, testified that the February 28, 1973 agreements related to "future business," "additional business" and that Domler would not be obligated to repurchase any agreements prior to the signing of the February 28, 1973 agreements. No testimony was elicited at trial as to any actions by Yegen taken in reliance on the February 28, 1973 agreements. No reasoned conclusion can be made, therefore, that the Repurchase Agreement is unenforceable for want of consideration. The most that may be gleaned is that plaintiff failed to prove that it is a third-party beneficiary under the Repurchase Agreement entitled to enforce that agreement, and assuming plaintiff was such third-party beneficiary, that the Repurchase Agreement was enforceable, that is, that it was a unilateral contract which was made valid by performance (see *Laura Distr. Corp., v Koch,* 35 AD2d 731).

Accordingly, the judgment of the Supreme Court, New York County (GOMEZ, J.), entered December 14, 1977, awarding plaintiff $97,504.18, after a nonjury trial, should be reversed, on the law, and the complaint dismissed, with costs and disbursements.

MURPHY, P. J. (concurring). The Repurchase Agreement is unambiguous and may be construed by this court from the four corners of that instrument. (10 NY Jur, Contracts, §§ 189-190.) I would agree with the majority that paragraph 9 of the Repurchase Agreement covers all assignments made by Domler to Yegen, both before and after the date of its execution. However, in accordance with the retrospective effect of paragraph 9, I would read paragraph 6 to cover all assignments made by Yegen, both before and after the execution date of that agreement. Flemington, as the assignee of the subject lease acquired by Yegen from Domler, must be considered a third-party beneficiary entitled to protection under the Repurchase Agreement.

I would dismiss the complaint on the ground that no consideration was given by Yegen for the Repurchase Agreement. The introductory paragraph of that agreement provides, *inter alia*, that: "You [Yegen] may purchase such agreements offered to you hereunder, as you shall determine in your sole discretion". "A promise must be definite to be sufficient consideration for a counterpromise; an indefinite promise is insufficient consideration." (17 Am Jur, Contracts, § 107, p 453.) While Domler agreed to repurchase any delinquent agreement, Yegen never promised to purchase any agreement. Since Yegen could do as it pleased, the Repurchase Agreement lacks mutuality of obligation, and is thus unenforceable *(Strobe v Netherland Co.,* 245 App Div 573, 578).

Section 5-1105 of the General Obligations Law is not controlling because it is not stated in the Repurchase Agreement that Yegen was being bound thereunder for any past consideration it had given. Paragraph 9 merely refers to the retroactive effect of the agreement; it can in no way be construed as expressing past consideration given by Yegen.

For the reason stated, I agree that the complaint should be dismissed.

MARKEWICH and SANDLER, JJ., concur with LUPIANO, J.; MURPHY, P. J., and SULLIVAN, J., concur in an opinion by MURPHY, P. J.

Judgment, Supreme Court, New York County, entered on December 14, 1977, unanimously reversed, on the law, vacated and the complaint dismissed. Defendant-appellant shall recover of plaintiff-respondent $75 costs and disbursements of this appeal.