OPINION OF THE COURT
David B. Saxe, J.
May a tenant of residential premises that are not regulated (because the premises are owned and operated by a hospital«thereby earning an exemption from the Rent Stabilization Law [Administrative Code of City of New York, § YY51-1.0 et seq.]) be neverthéless entitled to certain continued rights and privileges of occupancy at such premises as third-party beneficiaries of an agreement executed between the owners of the property and the United States Department of Housing and Urban Development (H.U.D.), which purports to limit the use of the premises by the owner-hospital?
*428 Mount Sinai is the owner of the apartment building located at 1245 Park Avenue which it purchased from the prior owner, Park House Sponsor Corp., in October, 1975. The respondents live in apartments Nos. 10K, 8G, 14G and 19E, respectively.
This building, like many others, is used by Mount Sinai to provide housing for its faculty, interns, residents, nurses, students and other staff members of the hospital and the school of medicine. Mount Sinai also rents units to residential tenants that are not professionally affiliated with the hospital. The respondents are among the latter group. The petitioner now seeks to limit its tenant population exclusively to persons affiliated with the hospital and, on this basis, seeks to evict each of the respondents herein.
I have determined that the premises are not subject to either the Rent Control or Rent Stabilization Laws. First, all of the relevant apartments have been vacancy decontrolled and are therefore not rent controlled. This conclusion is based on the fact that each of the respondents, with the exception of Boelczkevy, took possession of their apartments in the early 1970’s after the vacancy decontrol of the respective apartments. And, although Boelczkevy moved into the building in 1967, he did not take possession of his particular apartment until it had been similarly decontrolled.
The apartments are not subject to rent stabilization either, because, contained in the Emergency Tenant Protection Act of 1974 (L 1974, ch 576 [ETPA]), is a specific statutory exclusion exempting housing accommodations owned or operated by a hospital. That exclusion clearly applies here.
Section 5 (subd a, par [6]) of the ETPA states: “[Hjousing accommodations owned or operated by a hospital, convent, monastery, asylum, public institution, or college or school dormitory or any institution operated exclusively for charitable or educational purposes on a non-profit basis” shall be exempt from the act. (Emphasis added.)
As a hospital within the meaning of section 5 (subd a, par [6]), the petitioner is exempt from the Rent Stabilization Law. And, although the building was acquired by *429 Mount Sinai after the effective date of the ETPA, the exemption nevertheless applies. (See Museum of Modern Art v Kirk, 111 Misc 2d 1047 [App Term, 1st Dept].)
Therefore, each of the respondents, none of whom presently have written leases with the petitioner, are month-to-month tenants. Each respondent was served with a 30-day notice of termination, which purported to end their tenancies, but remained in possession subsequent to the time within which they were required to vacate. These holdover proceedings ensued.
Although the tenants have not derived any rights under the Rent Control or Rent Stabilization Laws, they contend that they have derived various rights as third-party beneficiaries of a regulatory agreement which was executed between their landlord, Mount Sinai Hospital and H.U.D., in connection with Mount Sinai’s purchase of the building.
Specifically, they contend that they may raise the petitioner’s alleged failure to comply with section 6 (h) of the regulatory agreement as a defense to this proceeding. That section provides that the owner will not, without the prior written approval of H.U.D. “permit the use of the dwelling accommodations * * * for any purpose except the use which was originally intended, or permit commercial use greater than that originally approved by the Secretary.”
Are the respondents proper parties to raise an alleged noncompliance by the petitioner under the regulatory agreement as a defense to this holdover proceeding even though the respondents were not parties to the regulatory agreement?
In order to prevail on this defense it is necessary for the respondents to prove (1) their status as third-party beneficiaries of the agreement, and (2) that the proposed actions of the petitioner commenced without H.U.D.’s approval are within the scope of the prohibition of section 6 (h) insofar as they represent a change in use to one not originally intended, or an increase in commercial usage on the premises.
With respect to the contention of the respondents that they are third-party beneficiaries of the regulatory agree *430 ment: “New York follows the nearly universal rule that a third person may, in his own right and name, enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. New York also follows the rule that the contract must have been intended for the benefit of the third person in order to entitle him to enforce it. Finally, New York follows the prevailing modern rule that there is no need for any consideration moving from the third person, any privity with him, or any obligation to him.” (22 NY Jur 2d, Contracts, § 271 et seq., pp 129-130, citing 17 Am Jur 2d, Contracts, §§ 302, 304, 308.)
The burden is upon the respondents claiming third-party beneficiary status to establish that the regulatory agreement was intended for their benefit. (Matter of Conay, 29 Misc 2d 1090, 1093; Flemington Nat. Bank & Trust Co. v Domler Leasing Corp., 65 AD2d 29, affd 48 NY2d 678.)
It is the petitioner’s position that the respondents are merely incidental beneficiaries to the regulatory agreement. They allege that the parties to the regulatory agreement never formulated an intent to directly benefit these tenants, and that, at most, the intent was that the benefits should redound to the public at large, or to a class of indefinite expression — which is insufficient to support a finding of third-party beneficiary status. (See Ultramares Corp. v Touche, 255 NY 170.) On this basis, the petitioner contends that the respondents are “merely * * * incidental * * * [beneficiaries] with no right to enforce the particular contracts” (Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 655).
The respondents argue that the regulatory agreement was intended to directly benefit them, as tenants and, as such, the contract inures to the benefit, not only of the contracting parties, but to them as well. (See Parkway Laundry Serv. v Decker, 257 App Div 327.) They conclude that the regulatory agreement vested them, and other tenants similarly situated, with enforceable third-party beneficiary rights precluding the petitioners’ contemplated use of the building and eviction of the respondents in the absence of approval from the secretary of H.U.D. (See 22 NY Jur 2d, Contracts, § 271 et seq.)
*431 I hold that the respondents’ contentions are correct and that they are third-party beneficiaries of the provision in question. Contrary to the petitioner’s contention that a holding of third-party beneficiary status would vest the respondents with rights of “perpetual tenancies”, my holding here only requires the petitioner, prior to any proposed change in commercial use, or use other than one originally intended, to secure the written approval of H.U.D. The burden is not too onerous and does not, in fact, prohibit a change in use but merely requires approval from the secretary prior to such change.
Having found that the respondents are third-party beneficiaries of the regulatory agreement, it is necessary to resolve the next issue: Is the hospital’s plan to evict all nonaffiliated residential tenants in order to provide housing solely for hospital and medical school affiliates either an increase in commercial use or a use other than, that originally intended? The petitioner answers this question in the negative and therefore contends that no approval was necessary from the secretary of H.U.D. and that the respondents, as month-to-month tenants, may be evicted after proper service of a 30-day notice of termination.
Although the building was previously used to provide housing for both affiliates and nonaffiliates of Mount Sinai, the landlord now seeks to limit or restrict the use to only one category — affiliated persons. This I hold is a change in use to one other than that originally intended within the meaning of section 6 (h) of the regulatory agreement. A change as here in the permitted population of the building from that which is broadly residential to one restricted to only affiliates of Mount Sinai, is a significant change in the use of the building from that which was originally intended. As third-party beneficiaries to the regulatory agreement, the respondents may assert this breach of the agreement as a defense. It was incumbent upon the petitioner to obtain the secretary of H.U.D.’s prior written approval for their proposal to limit the use of the premises. They did not. The petition is dismissed.